UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JONETTE ARMS,

    Plaintiff,

v.                                            Case No.

MILWAUKEE COUNTY
(Department on Aging,

    Defendant.

# COMPLAINT

## I. NATURE OF ACTION

1. This is a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, brought to redress the injuries inflicted on the plaintiff, Jonette Arms, by the defendant when she was not appointed to the position of Director for the Milwaukee County Department on Aging without a competitive search.

This action is also brought to remedy discrimination on the basis of disability, including but not limited to being regarded as an individual with a disability or disabilities, in the terms, conditions, and privileges of employment protected by Americans with Disabilities Act, as amended (ADAAA), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973, 29 U.SC. § 791, *et seq.* when Milwaukee County failed to provide Arms with reasonable accommodations, ultimately resulting in her constructive discharge.

Finally, this action is being brought to remedy violation of Ms. Arms's rights to be free from discrimination and to be free from retaliation for opposing discrimination in the workplace as protected by the Civil Rights Acts of 1964 and 1871, the Age Discrimination in Employment

1

Act, 29 U.S.C. § 626, the ADAAA, and the Rehabilitation Act when Milwaukee County failed to appoint Arms to the position of Director for the Milwaukee County Department on Aging after engaging in a national search for a Director.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, and 1343. This action is authorized and instituted pursuant to Section 501 of the Rehabilitation Act of 1973 (as amended) 29 U.S.C. § 791, which incorporates by reference Title I of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12201 *et seq.,* and the provisions of sections 501 through 504, and 410 of the ADA, 42 U.S.C. §§ 12201, *et seq.,* the ADA Amendments Act of 2008 (ADAAA), 42 U.S.C § 12101, *et seq.,* the Age Discrimination in Employment Act, 29 U.S.C. § 626, and by the Rehabilitation Act, 29 U.S.C. § 794a, which incorporates by reference Sections 706(f) through 706(k) of Title VII of the Civil Rights Act of 1964 ("Title VII").

3. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b) and (c) because the employment practices involved in this dispute occurred in Milwaukee County, Wisconsin, and thus venue is proper in the Eastern District of Wisconsin.

## III. PARTIES

4. Plaintiff Jonette Arms was an employee of the Milwaukee County Department on Aging (DOA) beginning in May 2010 within the meaning of the Civil Rights Acts of 1964 and 1871, Americans with Disabilities Act (ADAAA), the Age Discrimination and Employment Act (ADEA) and the Rehabilitation Act and is currently a resident of Wausau, Wisconsin; Arms's color is black, her race is African-American, her sex is female, she was over 40 years of age

when she was employed by Milwaukee County, and she has various disabilities, including fibromyalgia, rheumatoid arthritis, Sjogren's syndrome, osteoarthritis, depression, and anxiety.

5. Defendant Milwaukee county is an employer within the meaning of the Civil Rights Acts of 19664 and 1871, Americans with Disabilities Act (ADAAA), the Age Discrimination and Employment Act (ADEA) and the Rehabilitation Act and has the capacity to sue and be sued in this Court.

## IV. CONDITIONS PRECEDENT

6. All conditions precedent to this lawsuit within the meaning of Rule 9(c) of the Fed. R. Civ. Pro. have been performed or have otherwise occurred.

## V. FACTS

7. Arms began her employment as the Assistant Director of the Milwaukee County Department on Aging (DOA) in May 2010.

8. On or about June 5, 2015, then-Director of the DOA, Stephanie Sue Stein, retired.

9. Stein recommended to Milwaukee County Executive Chris Abele that he appoint Arms as Stein's successor in the position of Director for the DOA.

10. Instead, Abele assigned Arms to a Temporary Appointment to a Higher Position (TAHC) in the position of Interim Director of the Milwaukee County Department on Aging, and also required that she continue to perform all of the duties of her Assistant Director position while also performing the duties of Director.

11. Prior to her actual appointment to the TAHC position as the Interim Director, Arms was informed that she would be paid for her work in the position at the rate at which Stein had been paid when Stein retired as Director; instead, Arms was paid less than the lowest rate in

3

the County's director-level pay range.

12. Eventually Arms's salary was adjusted so that she was paid the minimum amount possible in the County's director-level pay range.

13. The Milwaukee County Department on Aging has an advisory board, the Milwaukee County Commission on Aging.

13. On or about June 26, 2015, 14 of the 16 Commissioners of the Milwaukee County Commission on Aging signed a letter requesting that Arms be appointed as the regular Director of the Milwaukee County Commission on Aging; the other two Commissioners were unavailable.

14. Shortly after her appointment as the Interim Director, Abele and his chief of staff, Raisa Koltun, began to treat Arms differently than they had treated Stein and proceeded to prohibit Arms from performing certain duties Arms had performed while Stein was the Director.

15. For example, while Stein was the Director of the DOA, Arms was in charge of media for the Department and she had not been restricted from access to or contact with the media.

16. On May 29, 2015, at the request of her then-supervisor, Stephanie Sue Stein, Arms spoke to Bill Glauber of the Journal Sentinel and on June 8, 2015, Arms spoke with Edgar Mendez from the Neighborhood News, after which Raisa Koltun told Arms that Arms was not to speak to the press without obtaining the approval of Nathan Holton, then-Director of Communications, with a copy of the request to be forwarded to Koltun, as well.

17. On July 1, 2015, there was a press conference related to the Wisconsin Senior Olympics Torch Relay/Seniorfest at Summerfest; Abele spoke at the press conference but did not acknowledge Arms or her work in organizing the event.

18. On August 27, 2014, Arms attended her first County Executive Cabinet Meeting as Interim Director; Abele did not acknowledge Arms or introduce her as a new member of the cabinet to her peers.

19. On September 10, 2015, Arms went to see her father in Mississippi, who was having surgery on September 11; she made a point to be back in Milwaukee in time for a previously-scheduled meeting with Abele on Monday, September 14, 2015, but without warning Abele simply did not attend the meeting.

20. On October 23, 2015, Abele attended the commission on Aging's monthly meeting, during which he acknowledged Stephanie Sue Stein's legacy, but did not acknowledge Arms or what Arms had accomplished even though she was sitting right next to him.

21. On December 4, 2015, Milwaukee County held a celebration of the 50 year anniversary of passage of the Older Americans Act called "Get Into the Act;" Arms was the Mistress of Ceremonies and at least three of the speakers praised her work, but Abele did not do so when he spoke and did not acknowledge Arms, the work she had done on behalf of the DOA or all that she had done to make the event – attended by approximately 400 people – a success.

22. On or about December 21, 2015, Koltun denied Arms the ability to carry over the vacation hours she earned in 2015 to 2016, even though the reason Arms was not able to use the time in 2015 was because she was performing dual roles as both the Interim Director and the Assistant Director.

23. Koltun also conferred directly with Arms's subordinates and asked them to perform certain tasks, including doing so without informing Complainant either before or after the contact, which undermined Arms's ability to monitor, approve and direct work flow.

24. Koltun further undermined Arms's ability to perform her jobs as Interim and

5

Assistant Director by transferring the financial officer for the DOA to the Department of Health and Human Services during the fiscal closing period, leaving Arms without adequate support staff.

25. On or about February 2, 2016, Abele's Director of Communications, Claire Zautke, contacted Vonda Nyang regarding whether Arms had taken any sick, personal or vacation time in the previous two weeks, which disrupted the DOA, undermined Arms's authority, and suggested that Abele was looking for a reason to not appoint Arms to the position of Director.

26. In the summer of 2015, Koltun told Arms that Abele needed to hold off on appointments until after the budget process in November.

27. After the budget process in November, Koltun told Arms that Abele needed to hold off on appointments until after the April election for County Executive.

28. However, in December 2015 Abele appointed Ismael Bonilla as Airport Director effective February 1, 2016; Ismael Bonilla is white/Caucasian, and male.

29. On January 22, 2016, during a Milwaukee County Commission on Aging meeting, County Board member and Commissioner, Steve Taylor, other commissioners, and Milwaukee County Department on Aging employees spoke up and asked Claire Zautke, who was at the meeting as a representative for County Executive Chris Abele, why Arms's appointment was being delayed. Staff and commissioners spoke up for Arms's abilities and vowed not to continue supporting the County Executive unless Arms was appointed prior to the upcoming election.

30. During a meeting on January 27, 2016, Koltun reprimanded Arms for not intervening during the January 22, 2016 meeting to stop the County Board member,

6

commissioners and employees from asking questions about the County Executive. Koltun informed Arms that she should have stated that she had an agreement with Abele to wait for her appointment after the April election.

31. On or about February 3, 2016, Arms filed her first complaint of discrimination, in which she complained about discrimination on the basis of color and race.

32. After Arms filed the complaint she was treated with continuous disrepect.

33. For example, Abele sent his aide, Jon Janowski, to the Milwaukee County Commission on Aging meeting on February 26, 2016; during the meeting, Janowski implied that he had inside information on Arms and the Department of Aging that he did not want to share in public when he asked the Commission members to meet with him individually to "get his perspective" on things that "they have been reading and hearing."

34. Other examples of discrespectful behavior by Abele and his staff include, but are not limited to the following:

a. On March 10, 2016 at a Milwaukee County Board of Supervisors Finance and Audit Committee Meeting, Jon Janowski walked past Arms with a stern, or disapproving, look on his face and would not make eye contact and would not acknowledge her with a greeting. Janowski was giving out handouts and did not offer Arms a handout as he did with other members of the audience.

b. On March 11, 2016, there was a Make It Work! Milwaukee forum for the race for County Executive in which Chris Abele spoke to the audience and did not acknowledge Arms' presence, even after someone shouted "HIRE JONETTE ARMS" from the back of the room and the entire room of approximately 150-200 people applauded.

c. From April 2016 through June 2016, Raisa Koltun canceled Arms' regular bi-weekly meetings and neither Koltun nor the County Executive scheduled any additional meetings with Arms.

d. On May 27, 2016, Arms was the Mistress of Ceremonies at the Milwaukee County Senior Citizen Hall of Fame celebration; Abele spoke at the event but did not acknowledge Arms as the department's Interim Director, or the work she had done to make the event a success.

35. On May 15, 2016, Arms formally applied for the position of Director for the Milwaukee County Department on Aging.

36. At that point, between her experiences with the Milwaukee County Department on Aging and her prior employment, Arms had 13 years experience working on issues related to aging.

37. Arms was informed on August 18, 2016, that she was not selected for the position.

38. Instead, a younger apparently bi-racial woman with no work experience related to issues of aging was selected.

39. Arms had been on Family and Medical Leave Act leave beginning in June 2016 because she was unable to work due to her various disabilities, which are fibromyalgia, rheumatoid arthritis, Sjogren's syndrome, osteoarthritis, depression and anxiety.

40. Due to the overwhelming workload and consistent undermining by Abele's staffers, Arms became ill with consistent sinus, laryngitis, and bronchial infections. Arms' right knee osteoarthritis made it unbearable for her to walk without pain and cortisone treatments no longer brought relief. Arms' fibromyalgia and rheumatoid arthritis symptoms were exacerbated

by the hostile work environment and consistently caused her pain and stiffness, and the inability to concentrate and stay focused. Arms was not sleeping at night, had consistent anxiety and crying spells and was extremely paranoid that she was being set up to fail and was going to somehow be injured by people working on behalf of the County Executive.

41. In September 2016, Arms asked the County to extend her leave because she was not yet adequately recovered to return to work; the request for leave was denied.

42. In October 2016, Arms again asked the County to extend her leave, this time through her attorney, who specifically asked that the leave be provided as a reasonable accommodation for Arms's disabilities; the second request was also denied.

43. Arms is aware of several County employees who have been allowed extended leaves of absence for their medical conditions where the leaves were even longer that what Arms requested.

44. In order to avoid a discharge, Arms resigned her position as Assistant Director by letter dated October 31, 2016, effective November 1, 2016.

## VI.  VIOLATIONS OF LAW

45. Defendant Milwaukee County and its relevant agents and supervisors, violated Arms's rights to be free from discrimination as guaranteed under the Civil Rights Acts of 1964 and 1871, the Americans with Disabilities Act, as amended (ADAAA), the Rehabilitation Act, and the Age Discrimination in Employment Act and retaliated against her for her use of those rights by, among other acts: 1) refusing to appoint her to the position of Director of the Department on Aging without competition for the position; 2) refusing to appoint her to the position of Director of the Department on Aging after there was a national search for a new Director; 3) refusing to grant her request for an extended leave of absence as a reasonable

9

accommodation for her disabilities; 4) constructively discharging her when it failed to grant the leave.

## VII. DAMAGES AND EQUITY

A. Damages

46. A. By virtue of Defendant's unlawful actions against the plaintiff, the plaintiff has sustained lost wages and benefits, future lost earning capacity, physical, mental and emotional distress, community humiliation and loss of reputation, for all of which she seeks compensatory damages in amounts deemed just by the Court.

B. Equity

47. For some of her injuries, the plaintiff has no plain, adequate or speedy remedy at law and thus she invokes the Court's equitable jurisdiction to award declaratory and injunctive relief against the Defendant. This shall include, but not be limited to, an order that Arms be instated to the position as Director of the Department on Aging.

## VIII. JURY DEMAND

48. Plaintiff hereby demands a trial by jury of all issues triable of right to a jury herein.

## IX. PRAYER FOR RELIEF

WHEREFORE, the plaintiff demands judgment awarding her compensatory damages in amounts deemed just by the Court, make-whole equitable relief, and the reasonable costs and expenses of this action including a reasonable attorney's fee, as well as such other and further relief as may be just. This shall include, but not be limited to, an order that Arms be instated into the position as Director of the Milwaukee County Department on Aging.

Date:   November 20, 2018

s/ Brenda Lewison

Attorney Brenda Lewison
SBN:   1025079

Law Office of Arthur Heitzer
633 W. Wisconsin Ave., Suite 1410
Milwaukee, WI  53203-1918
(414) 273-1040 x 14
(414) 273-4859 FAX
lewisonlaw@yahoo.com

ATTORNEY FOR THE PLAINTIFF