UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JONETTE ARMS,

        Plaintiff,

v.                                      Case No. 2:18-cv-1835

MILWAUKEE COUNTY
(Department on Aging).

        Defendant.

## **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

## **INTRODUCTION**

The Department of Aging (the "Department"), is a department within Defendant, Milwaukee County (the "County"). It exists to provide information, assistance, and resources to people over 60 years of age to help them remain active, independent, and connected to their community. Plaintiff, Jonette Arms, was the former assistant director of the Department. When the Department's Director, Stephanie Sue Stein, retired in June 2015 after 22 years in the position, Plaintiff was appointed as the interim Director while the County initiated a nationwide search and competitive interview process to find Ms. Stein's successor.

Plaintiff desired to be hired as the next Director, and she did not want to compete with any other candidates for the position. She also believed that she should not even be required to interview for the position. Rather, Plaintiff believed that she should have been immediately appointed as the Director. When she was not immediately appointed to the position, she filed an

administrative complaint with the Wisconsin Department of Workforce Development, Equal Rights Division ("ERD"), which she later withdrew in order to pursue these claims.

Despite the filing of her complaint, Plaintiff was given full consideration during the national search. She was one of the final four candidates, but the County ultimately decided to hire a better candidate to lead the Department of Aging. Although Plaintiff was not selected as the new Director, she retained her position as assistant director. During the hiring process Plaintiff used and exhausted all her available Family and Medical Leave Act ("FMLA") leave and other leaves. She then notified the County that she was unable to return to work, and she requested an additional, indefinite period of leave. Because the County was unable to offer indefinite leave as a reasonable accommodation, it declined to grant Plaintiff's leave request. Plaintiff refused to request a shorter unpaid leave and instead voluntarily resigned from her employment.

Plaintiff has filed a shotgun style complaint alleging that the County violated a myriad of laws, including Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Act of 1871, 42 U.S.C. § 1981 ("Section 1981"), the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and the Age Discrimination in Employment Act, 29 U.S.C. § 626 ("ADEA"). Plaintiff claims that each of these laws was violated when:

1. She was not automatically appointed as Director without a competitive search and interview process;
2. She was not hired as the Director after a nation-wide search and instead the County hired a bi-racial woman;
3. She was not allowed an indefinite leave of absence after she exhausted all her leave (more than three months) and could not return to work for at least another six months; and
4. She was constructively discharged.

Compl., ¶ 45. Plaintiff also claims that each of these laws was violated when the County "retaliated against her for her use of those rights." *Id.*

2

Plaintiff's Complaint is woefully inadequate and fails as a matter of law. Even assuming the truth of the well-plead factual allegations, she cannot identify actionable claims of discrimination or retaliation. The Complaint must be dismissed.

## SUMMARY OF ALLEGATIONS[1]

Plaintiff was hired by the County as the assistant director of the Department starting in 2010. Compl., ¶ 7. She is an African American woman who is over the age of 40. *Id.* at ¶ 4. In June 2015, the Director of the Department, Ms. Stein, retired after 22 years in the position. *Id.* at ¶ 8. The County Executive, Christopher Abele, then assigned Plaintiff as interim Director of the Department. *Id.* at ¶ 10.

Plaintiff claims that after she was assigned as the interim director she was subjected to certain perceived slights, including being required to touch base with the County director of communications before speaking to the media, not having her accomplishments publicly acknowledge by the County Executive, the canceling of meetings, and having the County Executive's chief of staff communicate directly with Plaintiff's subordinates. *See generally id.* at ¶¶ 14-25. Plaintiff recognizes, and alleges, that due to the Fall 2015 budget process and the Spring 2016 County Executive election, the County held off on appointing a permanent Director to the Department. *See id.* at ¶¶ 26-27. Despite this, in February 2016 Plaintiff filed an ERD complaint alleging that the County's decision to not automatically appoint her as the Director was due to discrimination based on color and race. *Id.* at ¶ 31. Plaintiff later claimed that she was treated with "disrespect" after she filed her complaint. *Id.* at ¶ 32. She provides various examples of what she perceived as slights. *See id.* at ¶ 34.

---

[1] While the facts in the Complaint must be relied upon in bringing this motion to dismiss, the County does not admit any of the allegations and reserves the right to contest the same in the future.

Eventually, the County initiated a nationwide search for the Director position. Plaintiff formally applied to be hired for the position. *Id.* at ¶ 35. Ultimately, Plaintiff was not selected to become the next Director. Instead, the County hired a 45-year-old African American woman as the Director. *See id.* at ¶ 38. Plaintiff remained the assistant director. *See id.* at ¶ 44.

Starting in June 2016, and continuing through the hiring process, Plaintiff was on FMLA leave for a variety of illnesses and conditions. *Id.* at ¶ 39. In September 2016 when Plaintiff's FMLA leave was exhausted, she requested a leave of absence. *See id.* at ¶ 41; Ex. A.[2] That request was denied, and Plaintiff then had her attorney make a similar request in October 2016. *Id.* at ¶¶ 41-42. At that time, the County requested medical documentation to determine if Plaintiff's request could be accommodated. *See* Ex. B. Plaintiff's doctors certified that she could not possibly return to work until at least March 31, 2017 at the earliest and that no reasonable accommodation would allow her to perform her job duties. *Id.* After receiving Plaintiff's doctors' reports, the County denied her request for additional leave because: she had exhausted all available leave time (FMLA, vacation, sick, holiday, and personal); her doctors indicated that she would need to remain

---

[2] Exhibits A through G are attached to the Affidavit of Raisa Koltun. Under the incorporation by reference doctrine, "[a] court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim . . . without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (internal citation omitted). The Seventh Circuit "has been relatively liberal in its approach to the rule." *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). Here, Plaintiff claims that she was denied extended leave as a reasonable accommodation. *See* Compl., ¶¶ 41-42. Plaintiff intentionally omits facts from the Complaint that address the nature and length for her request for extended leave. Such information is documented and demonstrates that her claims for failure to accommodate under the ADA and Rehabilitation Act fail as a matter of law under binding Seventh Circuit precedent. Plaintiffs cannot purposely omit essential facts that support dismissal of their claims when those facts are evidenced by documents within defendant's possession. *See Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc.*, No. 09-CV-5641, 2011 WL 1303387, at *15 (N.D. Ill. Mar. 31, 2011) (collecting cases); *see also Buetow v. A.L.S. Enterprises, Inc.*, 564 F. Supp. 2d 1038, 1044 (D. Minn. 2008) (citing *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007)) (stating that plaintiffs "cannot intentionally omit facts relevant to a particular claim in a complaint").

4

off work indefinitely, with the earliest potential return to work date after March 31, 2017; and her doctors advised that during this period of September 2016 to March 2017 there were no accommodations that would allow Plaintiff to return to work. *See* Ex. C; Ex. D; Ex. E.

In response, Plaintiff's attorney wrote to the County objecting to the denial of indefinite leave and questioned whether an individualized assessment was performed on Plaintiff's request for indefinite leave. *See* Ex. F; Compl., ¶ 42. Corporation Counsel for the County responded in detail to Plaintiff's attorney's letter. *See* Ex. G. Corporation Counsel explained that the County conducted an individualized assessment of Plaintiff's request for indefinite leave as a reasonable accommodation based upon the job's complexity and the staffing crises at the time in the top ranks at the Department, particularly with a new Director in place. *Id.* Corporation Counsel explained that three of the top positions in the Department were vacant: the assistant director position that Plaintiff held was vacant since she was on leave, the fiscal manager position was vacant due to that individual's departure in February 2016, and the resource manager was vacant due to the incumbent's retirement in August 2016 after nearly thirty years at the Department. *Id.* In sum, the County explained that granting Plaintiff indefinite leave would be an undue burden on the County based on the totality of the circumstances. *Id.*

On October 31, 2016, Plaintiff resigned. Compl., ¶ 44. She stated that she was resigning in lieu of discharge as she would not return to work or request an alternative accommodation other than at least six-months of unpaid leave. *Id.*

5

## MOTION TO DISMISS STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). A court, in examining a pleading under Fed. R. Civ. P. 12(b)(6), conducts a two-step inquiry. First, the Court should discard all legal conclusions from the pleading, and second, as to the remaining factual allegations, the Court should test the sufficiency of the facts pled to determine whether they provide the necessary "factual enhancement" to push the claim across the line from a mere possibility of entitlement to relief into the territory of plausibility of entitlement to relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678–79. Stated another way, a complaint must include sufficient "factual enhancement" to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 557. A complaint that fails to do so "must be dismissed." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. It is not enough for a plaintiff to plead facts that are "merely consistent with" liability "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotations omitted).

6

A plaintiff cannot survive dismissal by making conclusory allegations that the elements of a claim have been satisfied. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.*, and "a plaintiff's obligations to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 687.

## ARGUMENT

I. **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER TITLE VII OR SECTION 1981.**

    A. **Plaintiff has failed to allege sufficient facts to identify discrimination under Title VII and Section 1981.**

To avoid dismissal under Rule 12(b)(6), a complaint claiming discrimination under Title VII or Section 1981[3] must allege that the employer instituted a specified adverse employment action against the plaintiff because of his or her membership in a protected class. *See Savoy v. BMW of N. Am., LLC*, 313 F. Supp. 3d 907, 917 (N.D. Ill. 2018). While this requirement is not overly burdensome, a complaint must still "describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests" and "plausibly suggest that the plaintiff has a right to relief, raising the possibility above the speculative level." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2007). Plaintiff has failed to even meet this minimal standard.

---

[3] Courts apply the same analysis to Plaintiff's Title VII and Section 1981 claims premised on race discrimination. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015) ("The legal analysis for discrimination claims under Title VII and § 1981 is identical[.]").

Plaintiff asserts that the County acted discriminatorily when it failed to appoint her to the Director position without a competitive search and when it failed to hire Plaintiff as the Director after a competitive search in violation of Title VII and Section 1981. Despite Plaintiff's conclusions, her Complaint fails to contain facts that plausibly suggest that she is entitled to relief on any of these claims.

### 1. Plaintiff's "failure to appoint" claim fails as she does not identify any discriminatory act.

Plaintiff states that she brings her Title VII and Section 1981 discrimination claims because she was not appointed to the position of Director of the Department of Aging without a competitive search. Compl., ¶ 1. This is apparently a "failure to promote" claim, but it is an odd claim, because it is specifically identified as the failure to promote "without conducting a competitive search." *Id.* Plaintiff has separately raised the issue of the failure to hire her after the national search.

The deficiencies of this failure to promote claim are abundant. First, Plaintiff does not identify why she believes that she was somehow entitled to be automatically appointed to the Director's position when Ms. Stein retired. Without some practice or policy—neither of which is identified by Plaintiff—to establish that anyone had a right to be promoted to the Director position without a competitive search, Plaintiff's claim is one of unfulfilled want or desire, not discrimination, and it is not actionable. *See Jackson v. Racine Cty.*, No. 02-C-1262, 2005 WL 2291025, at *12 (E.D. Wis. Sept. 19, 2005), *aff'd on other grounds sub nom. Jackson v. Cty. of Racine*, 474 F.3d 493 (7th Cir. 2007) (". . . absent a stated policy or recognized practice that [plaintiff] was entitled to the temporary promotion, failure to appoint her as acting director cannot constitute an adverse employment action.").

.

8

In a claim of race discrimination premised on a failure to promote, a plaintiff must plead facts that could establish that discrimination took place because of her race, i.e., that she was a member of a protected class and that the employer promoted someone outside of the protected class. *See Begolli v. Home Depot*, No. 11-CV-380-BBC, 2011 WL 2670196, at *1 (W.D. Wis. July 7, 2011).[4] This requires Plaintiff to allege facts from which it can be inferred that the County's failure to appoint her as Director without a competitive search was based upon unlawful race discrimination.

Even if Plaintiff had plead facts to show some sort of right to be promoted without a competitive search, she does not claim that any other person of some other race was appointed to the Director's position without a competitive search. In fact, she alleges that no one was appointed to the Director's position without a competitive search. This statement is fatal to her Complaint because "[w]hen ruling on a motion to dismiss, the court must review the complaint to determine whether it contains 'enough fact to raise a reasonable expectation that discovery will reveal evidence' to support liability for the wrongdoing alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (citing *Twombly*, 550 U.S. at 556; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Plaintiff's Complaint concludes that the failure to appoint her without a competitive search was discrimination on the basis of her race, but she alleges no facts to support such a claim. A plaintiff alleging race discrimination cannot merely state that she is asserting a claim under Title VII and generically describe interactions with her employer that have nothing to do with race. For example, in *Badal v. Ariens Co.*, No. 17-C-1704, 2018 WL 3037401, at *4 (E.D. Wis. June 19,

---

[4] In order to establish a prima facie case for failure to promote under Title VII, a plaintiff must demonstrate, amongst other elements, that "the employer promoted someone outside of the protected group who was not better qualified for the position that she sought." *Jaburek v. Foxx*, 813 F.3d 626, 631 (7th Cir. 2016).

9

2018), the plaintiffs argued that a conclusion of law such as "[employer] terminated their employment or otherwise discriminated against them in the conditions or terms of their employment because of their race" was sufficient to state a claim. The court, however, disagreed and stated that there must be specific allegations of discrimination on the basis of race in their Title VII counts or in the factual allegations on which they were based. *Id.* Likewise, in *Memon v. Waukesha Cty. Tech. Coll.*, No. 13-CV-704-BBC, 2014 WL 1207434, at *1 (W.D. Wis. Mar. 24, 2014), the court held that the allegation that the defendant was "practicing passive racism," was insufficient to state a claim because he did "not allege any facts from which it can be inferred that defendant's failure to hire him was unlawful discrimination."

Here, Plaintiff has plead facts to show that no one, much less someone outside of her protected class, was appointed to the Director's position without a competitive search. This is not a mere failure to plead facts. Rather, Plaintiff has affirmatively plead facts to show that she could never establish that discrimination occurred when she was not appointed without a nation-wide search. *See Jackson v. Marion Cty.*, 66 F.3d 151, 153 (7th Cir. 1995) (stating that "a plaintiff can plead himself out of court by alleging facts which show that he has no claim"). In other words, "a party may plead itself out of court by . . . including factual allegations that establish an impenetrable defense to its claims." *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006). Plaintiff has plead herself out of court on this claim and it must be dismissed.

2.     **Plaintiff's claim that discrimination occurred when someone else was hired as the director fails as she identifies that her comparator was of the same protected class.**

Plaintiff concludes that she was discriminated against on the basis of her race when she was not hired for the director position and, instead, the County hired a "bi-racial woman" as the Director. Compl., ¶ 38. As discussed above, a race discrimination claim cannot plausibly

10

suggest that race discrimination occurred without the plaintiff being able to establish that she is a member of a protected class, and that someone who is not a member of that protected class was treated differently. Accordingly, when Plaintiff pleads that she is African American and that her comparator is "bi-racial" she pleads herself into dismissal.

Courts have long, and consistently, held that individuals who are bi-racial are "of the same protected class as African Americans." *Collins v. TIAA-CREF*, No. 306CV304RJC, 2009 WL 3077555, at *6 n.8 (W.D.N.C. Sept. 23, 2009), *aff'd*, 386 F. App'x 409 (4th Cir. 2010); *see, e.g.*, *Moore v. Dolgencorp, Inc*., No. 1:05–CV–107, 2006 WL 2701058, at *4 (W.D. Mich. Sept.19, 2006) (discussing the rationale behind this consideration and citing S*mith v. Mission Associates Ltd. Partnership*, 225 F.Supp. 2d 1293, 1299 (D. Kansas 2002) (holding bi-racial plaintiffs, "being half black and half caucasian," are members of a protected class)).

In *Moore*, the court specifically held:

> The court rejects plaintiff's claim that a light-skinned African-American of 'mixed race' heritage is not entitled to protection as a member of this particular protected class (i.e., race). *See, e.g.*, *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 994-95 (6th Cir. 1999) (employer violated Title VII when it discharged a white employee allegedly because his child was bi-racial); *Smith v. Mission Associates Ltd. Partnership*, 225 F.Supp. 2d 1293, 1299 (D. Kansas 2002) (bi-racial plaintiffs, 'being half black and half caucasian' are members of a protected class for purposes of a discrimination claim under Civil Rights Act of 1968); *Jackson v. Katy Independent School District*, 951 F.Supp. 1293, 1302 (S.D. Texas 1996) (bi-racial student, being the son of an African-American male, is a member of a protected class under the Civil Rights Act of 1964). To recognize a legal hierarchy within the protected class of race based upon differences in the hues of skin color would create or deny legal remedies based upon sub-categories of this class that Congress has not chosen to recognize.

2006 WL 2701058, at *4.

While a plaintiff does not necessarily need to plead the elements of a prima facie case in order to state a claim, when a plaintiff pleads affirmative facts that make it impossible to establish her claim, the plaintiff pleads herself out of court. *See Tamayo*, 526 F.3d at 1086 ("A

11

plaintiff pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.") (internal citations omitted). And, here, when Plaintiff plead that she is a member of a protected class under Title VII and Section 1981, and then points to a comparator who is also a member of that protected class (i.e., a "bi-racial woman"), she has plead herself into dismissal. *See Jackson*, 66 F.3d at 153.

**B.    Plaintiff has failed to state a claim for retaliation under Title VII and Section 1981.**

Plaintiff also claims the County retaliated against her for filing an ERD complaint when she was not appointed to the Director position after a nationwide search was conducted. By her own fact scenario, Plaintiff lays out that she was not appointed to the Director position without a competitive search and then she filed a complaint of discrimination. Thus, her claim of retaliation can only relate to the claim that she was retaliated against when she was not appointed to the Director position after a nationwide search was conducted.

To survive a Rule 12(b)(6) motion on a retaliation claim, Plaintiff must sufficiently allege that the claimed retaliatory misconduct constitutes an "adverse employment action" for purposes of Title VII[5] and establish a causal link between the retaliatory misconduct and the protected activity. *See Straub v. Jewel Food Stores, Inc.*, No. 17 C 6401, 2018 WL 4512060, at *4 (N.D. Ill. Sept. 20, 2018) (citing *Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 201–02 (7th Cir. 2013)).

"In the retaliation context, adverse employment action simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." *Straub*, 2018 WL 4512060, at *4 (internal citations omitted). A failure to hire a job applicant can be an adverse employment action. A plaintiff, however, must "establish the requisite causal link between" the

---

[5] Courts apply the same elements to retaliation claims under Title VII and Section 1981. *See Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

protected action and the adverse employment action. *Id.* As explained by the district court in *Straub*:

> While Straub 'need not present *proof* of a causal link' between the protected activity and adverse employment action to survive a motion to dismiss, *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 897 (7th Cir. 2003) (emphasis added), he must allege sufficient facts from which the Court can infer that the alleged retaliatory conduct—*i.e.*, the 2016 harassment, November 2016 incident with the store director, or December 2016 termination—was caused by the 2010 EEOC charge. *See Adams*, 742 F.3d at 728 (plaintiff must provide more than 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements').

*Id.* at *5 (emphasis in original).

Plaintiff fails to allege facts to enable the Court to infer a causal link between the filing of the ERD complaint and the decision to hire another applicant. Here, Plaintiff filed an ERD complaint on February 3, 2016 because she was not appointed as Director without a competitive search or interview process. Plaintiff claims after she filed the complaint, she was treated with disrespect. However, all the allegedly disrespectful conduct is so insignificant that it cannot be logically inferred to have been caused by filing of the ERD complaint. For example, the County Executive's aid wanting to meet with an advisory board individually, or that aide giving Plaintiff a "stern, or disapproving, look," or not giving her a handout at a meeting are all trivial actions that cannot be imputed to the filing of the complaint. *See Hilt-Dyson v. City Of Chicago,* 282 F.3d 456, 466 (7th Cir. 2002) (explaining that not every change that makes an employee unhappy is actionable for purposes of a Title VII retaliation claim); *Griffin v. Potter,* 356 F.3d 824, 829 (7th Cir. 2004) (noting that "adverse employment action" must be materially adverse and not merely an inconvenience or a change in job responsibilities); *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (stating that intimidation allegedly suffered by being "stared and yelled at . . . is not an actionable harm"). Likewise, not publicly acknowledging Plaintiff or cancelling meetings can

only be considered rudeness without any material harm. *See Hopkins v. Bd. of Educ. of City of Chicago*, 73 F. Supp. 3d 974, 989 (N.D. Ill. 2014) (holding that "[b]admouthing Hopkins with personal attacks in front of students, parents, and other teachers would certainly be unprofessional conduct, but workplace rudeness without material harm is too petty and tepid" or "too trivial to support a Title VII retaliation claim") (internal citations omitted).

Finally, the mere fact that Plaintiff applied for the Director position and was not selected over other candidates is insufficient to demonstrate that the ultimate decision to hire another applicant was caused by the filing of her ERD complaint. *See Sanchez v. Henderson*, 188 F.3d 740, 747 (7th Cir. 1999) ("[A]s a matter of law, mere knowledge of the plaintiffs protected activity prior to an adverse employment action does not establish a retaliatory motive."). Additional facts must be present to create a reasonable inference that an adverse employment action was causally related to the protected activity. *See Gonzalez v. Sarabia*, 720 F. App'x 213, 214 (5th Cir. 2018) (stating that "the temporal proximity of his grievance and the transfer alone was not sufficient to state a claim that Burgess transferred him in retaliation for his filing the grievance"). All Plaintiff claims is that she filed an ERD complaint on February 3, 2016, and then in August 2016, she was not selected as the new Director. This is not enough to state an actionable claim for retaliation. That singular allegation does not create a reasonable inference that an adverse employment action was causally related to the protected activity.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER THE ADA OR REHABILITATION ACT.

Plaintiff alleges that the County violated the ADA and the Rehabilitation Act by: failing to appoint her to the Director position without a competitive search; failing to hire her as the Director after a competitive search; and failing to provide her with six months of unpaid leave as a reasonable accommodation for her disabilities, leading to her resignation in lieu of termination.

14

These bare allegations are not sufficient for Plaintiff to maintain a claim under the ADA or Rehabilitation Act as a matter of law.

### A. Plaintiff's ADA and Rehabilitation Act claims fail as she is not a qualified individual with a disability.

The ADA makes it unlawful for an employer to discriminate against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Likewise, the Rehabilitation Act says that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). The legal standards under the Rehabilitation Act and the ADA are identical, so to prevail on a claim under either statute, a plaintiff must be an "otherwise qualified individual . . . who, with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires." *Golden v. Indianapolis Hous. Agency*, 698 F. App'x 835, 836–37 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 1446, 200 L. Ed. 2d 719 (2018).

Plaintiff's ADA and Rehabilitation Act claims are legally doomed because she has plead that she is not a qualified individual with a disability. Plaintiff specifically plead that from June 2016 through at least March 2017 she was unable to perform her job for the County and that there were no accommodations that would allow her to do so[6]. *See* Compl., ¶¶ 39-42; Ex. B. A person who cannot attend work is not a "qualified individual with a disability":

> As the Seventh Circuit explained, '[a]n employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate . . . unreliable attendance.' *Basden,* 714 F.3d at 1037. 'A plaintiff whose disability prevents her from

---

[6] Plaintiff asserts that the only "accommodation" that would enable her to perform her job was an extended leave of absence. As explained below, however, being allowed to not perform one's job is not a reasonable accommodation.

15

coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes.' *Id.* Furthermore, '[t]he rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual.' *Severson*, 872 F.3d at 481 (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)). In addition, 'an employer is not required to 'create a new job or strip a current job of its principal duties to accommodate a disabled employee.'' *Id.* at 482 (quoting *Gratzl v. Office of Chief Judges of 12th, 18th, 19th & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010)). With these legal principles in mind, and in light of the designated evidence discussed above, the Court determines that summary judgment in favor of Butler is appropriate on Maffeo's disability discrimination claim because Maffeo was not able to perform the essential functions of her job, and thus, she was not a qualified individual under the ADA.

*Maffeo v. Butler University*, No. 116CV01987TWPMPB, 2018 WL 999038, at *10 (S.D. Ind. Feb. 20, 2018).

Plaintiff's concession that she could not perform her job duties for at least nine months, and that there were no accommodations that would allow her to do so, pleads her into a legal conclusion that she is not a qualified individual under the ADA or Rehabilitation Act. Her ADA and Rehabilitation Act claims must be dismissed.

**B.      Plaintiff cannot maintain a failure to accommodate claim because a multi-month leave of absence after the exhaustion of her FMLA leave is unreasonable as a matter of law.**

Plaintiff's failure to accommodate claim is entirely dependent on her belief that the County was required to grant her an extended leave of absence as a reasonable accommodation. This view of the law, however, is entirely misguided. The Seventh Circuit Court of Appeals has explicitly held that "a long-term leave of absence cannot be a reasonable accommodation." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 1441, 200 L. Ed. 2d 717 (2018). The Seventh Circuit explained:

As we noted in *Byrne*, '[n]ot working is not a means to perform the job's essential functions.' 328 F.3d at 381. Simply put, an extended leave of absence does not give a disabled individual the means to work; it excuses his not working. Accordingly, we held in *Byrne* that '[a]n inability to do the job's essential tasks means that one is not 'qualified'; it does not mean that the employer must excuse

16

the inability.' *Id.*; *see also Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ('The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual.').

*Id.* at 481. "An employee who needs long-term medical leave *cannot* work and thus is not a 'qualified individual' under the ADA." *Id.* at 479 (citing *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003)) (emphasis in original).

Simply put, "a medical leave spanning multiple months does not permit the employee to perform the essential functions of his job. To the contrary, the inability to work for a multi-month period removes a person from the class protected by the ADA." *Id.* at 481 (internal citations omitted). Thus, the Seventh Circuit has explained: "*Severson* requires us to hold that a request for **six months of medical leave in addition to the twelve weeks required by the FMLA** removes an employee from the protected class under the ADA and the Rehabilitation Act." *Golden*, 698 F. App'x at 837 (emphasis added).

Plaintiff's situation is identical to the plaintiff in *Severson*, where the plaintiff asked his employer to grant him six months of leave after he exhausted his FMLA entitlement. 872 F.3d at 478. Plaintiff also exhausted her FMLA leave and then requested six months additional leave as a reasonable accommodation. Her doctors indicated that she could not return to work until March 31, 2017 at the earliest, and that no reasonable accommodation would allow her to perform her job duties during this period. Six months of leave is not a reasonable accommodation as a matter of law. *See id.* at 478–79.

Because Plaintiff's ADA and Rehabilitation Act failure to accommodate claims are solely premised on a failure to grant her at least a six-month leave of absence after the expiration of her FMLA leave, her failure to accommodate claim fails as a matter of law.

17

**C.**   **Plaintiff has failed to state a claim for constructive discharge under the ADA or Rehabilitation Act as she has not plead facts to sufficiently establish that her working conditions had become intolerable.**

Constructive discharge occurs where "an employee resigns or retires from employment, but the resignation or retirement was not truly voluntary." *Wright v. Ill. Dept. of Children and Family Serv.*, Case Nos. 13–1552 and 13–1553, 2015 WL 4863400, at *9 (7th Cir. Aug. 14, 2015). A constructive discharge may occur if "an employer makes the working condition sufficiently intolerable so that a reasonable person standing in the position of the employee would have resigned or retired" or if "at the time the employee resigns or retires, the employee reasonably believes that, had he not resigned or retired, he would have been immediately fired." *Blickle v. Illinois Dep't of Children & Family Servs.*, No. 12 C 9795, 2015 WL 5693081, at *5 (N.D. Ill. Sept. 28, 2015) (internal citations omitted). Both methods, however, require the plaintiff to show that her "working conditions had become intolerable." *Chapin v. Fort–Rohr Motors, Inc.,* 621 F.3d 673, 679 (7th Cir. 2010).

Plaintiff's constructive discharge claim fails with her failure to accommodate claim. Because the County did not violate the ADA or Rehabilitation Act, and because Plaintiff was not entitled to a reasonable accommodation under those laws, she could not have been constructively discharged. The sole basis for her constructive discharge claim was that she resigned in lieu of termination rather than returning to work. As stated above, a request for a six-month unpaid leave of absence after exhausting FMLA leave is unreasonable as a matter of law. Plaintiff was not entitled to any additional leave and her decision to resign instead of returning to work is not a constructive discharge as a matter of law.

18

**D.** **Plaintiff has failed to state a claim for retaliation under the ADA or Rehabilitation Act because she did not engage in any activity protected by those laws.**

Plaintiff concludes that she was retaliated against in violation of the ADA and Rehabilitation Act because she not selected as Director after the nationwide search. Plaintiff, however, fails to allege any facts that could carry her burden.

To state a claim for retaliation under the ADA or Rehabilitation Act[7], a plaintiff must allege that defendant subjected her to an adverse employment action because she engaged in activity protected by the ADA or Rehabilitation Act. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). The protected activity must be specifically identified. *Id.* "Protected activity occurs when a person has opposed any act or practice that the ADA prohibits or made a charge or participated in an ADA case." *Sanders v. Ill. Dep't of Cent. Mgmt. Servs.*, 593 Fed. App'x. 575, 577 (7th Cir. 2015) (internal citations omitted).

Here, Plaintiff did not oppose any practice made unlawful by the ADA or Rehabilitation Act. Rather, she only filed an administrative complaint alleging discrimination on the basis of color or race. *See* Compl., ¶ 31. Likewise, there are absolutely no allegations in the Complaint that even remotely discuss Plaintiff engaging in any activity protected by the ADA or Rehabilitation Act or participated in an ADA or Rehabilitation Act case before the competitive interview process for Director. Thus, Plaintiff's retaliation claim under the ADA and Rehabilitation Act must be dismissed.

---

[7] Rehabilitation Act and ADA retaliation provisions are materially identical**.** *See Twisdale v. Snow*, 325 F.3d 950, 952 (7th Cir. 2003).

19

III.	**PLAINTIFF FAILS TO STATE A CLAIM UNDER THE ADEA BECAUSE SHE DOES NOT ALLEGE FACTS THAT WOULD ALLOW THIS COURT TO INFER THAT AGE DISCRIMINATION OCCURRED.**

Plaintiff also claims she was discriminated and retaliated against in violation of the ADEA because she not selected as Director after the nationwide search. Plaintiff's Complaint, however, is threadbare and must be dismissed.

A.	**Plaintiff provides no facts to create a reasonable inference that an adverse employment action was causally related to age.**

The ADEA prohibits employers from discriminating against employees who are forty years of age or older because of their age. 29 U.S.C. §§ 623(a)(1), 631(a); *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). A person over 40 years of age can state a claim of age discrimination if his or her comparator is also over 40, but the comparator muse be considered substantially younger for purposes of ADEA protection. The Seventh Circuit has interpreted this to mean that the younger employees need not be under the age of forty but must, instead, be at least ten years younger than the plaintiff. *Martino*, 574 F.3d at 454 (7th Cir. 2009); *Yee v. UBS O'Connor, LLC*, 2010 WL 1640192, at *18 (N.D. Ill. 2010); *Hamilton v. Nat'l Propane*, 276 F.Supp. 2d 934, 944–46 (W.D. Wis. 2002).

Plaintiff alleges that she was over 40 in August 2016 and that the woman hired as the Director was 45 years old. Compl., ¶ 38. Plaintiff offers this Court no facts by which it could infer that the woman hired as the Director was substantially younger than her. As such, Plaintiff's Complaint fails to state a claim for relief upon which relief can be granted and it must be dismissed.[8]

---

[8] This issue is not just an exercise in proper pleading. Even if Plaintiff would seek to amend her Complaint to allege her actual age, she will not be able to show that the woman hired as the Director was at least ten years younger than she was. Thus, this Complaint fails to state a claim for relief, and Amending the complaint to address this issue would be futile.

**B.** **Plaintiff fails to state a claim for retaliation under the ADEA because she cannot identify that she engaged in any activity protected by the statute.**

The ADEA prohibits an employer from retaliating against an employee "because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). "To establish a prima facie case of retaliation, plaintiffs must show evidence from which a reasonable jury could find that (1) plaintiffs engaged in statutorily protected activity; (2) they suffered an adverse employment action; and (3) there is a causal connection between plaintiffs' protected activity and [the adverse action]." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000).

Here, however, Plaintiff did not oppose any practice made unlawful by the ADEA. Rather, she only filed an administrative complaint alleging discrimination on the basis of color or race, not age. *See* Compl., ¶ 31. Similarly, there is nothing in the Complaint that points to any decisions being based on age or have anything to do with age. Plaintiff fails to state a claim for retaliation under the ADEA.

<u>**CONCLUSION**</u>

For the reasons stated above, the County respectfully request that the Court grant its motion to dismiss for failure to state a claim upon which relief can be granted and dismiss Plaintiff's Complaint with prejudice.

Dated this 11th day of February, 2019.

MALLERY & ZIMMERMAN, S.C.
Attorneys for Defendant

By:    /s/Ronald S. Stadler
          Ronald S. Stadler
          State Bar No. 1017450
          Jonathan E. Sacks
          State Bar No. 1103204

731 North Jackson Street, Suite 900
Milwaukee, Wisconsin 53202-4697
telephone: 414-271-2424
facsimile: 414-271-8678
e-mail: rstadler@mzmilw.com
       jsacks@mzmilw.com

22