# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JONETTE ARMS,

                **Plaintiff,**

    v.                                          Case No. 18-CV-1835

MILWAUKEE COUNTY
**(Department on Aging),**

                **Defendants.**

## DECISION AND ORDER

### INTRODUCTION

Plaintiff Jonette Arms filed this action against defendant Milwaukee County, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. § 1981; 42 U.S.C. § 1983; the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. § 12101, *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*; and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626. (ECF No. 1, ¶ 1.) Milwaukee County moves for dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 10.) All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 4, 8.) Milwaukee County's motion is ready for resolution.

## FACTS

The following facts are taken from Arms's complaint.

Arms is an African-American female over the age of forty. (ECF No. 1, ¶ 4.) She began her employment with the Milwaukee County Department on Aging in May 2010 as the Assistant Director. (*Id.*, ¶ 7.) When the Director of the Department on Aging, Stephanie Sue Stein, retired on or about June 5, 2015, she recommended to Milwaukee County Executive Chris Abele that he appoint Arms as her successor (*id.*, ¶ 9), and fourteen out of sixteen Commissioners of the Milwaukee County Commission on Aging signed a letter requesting that Arms be appointed as Director (*id.*, ¶ 13). Instead, Abele assigned Arms to a "Temporary Appointment to a Higher Position" as "Interim Director of the Milwaukee County Department on Aging." (*Id.*, ¶ 10.) Arms was required to perform the duties of Assistant Director while also performing the duties of Director. (*Id.*)

Shortly after Arms's appointment as Interim Director, Abele and his Chief of Staff, Raisa Koltun, began to treat Arms differently than they had treated Stein. (ECF No. 1, ¶ 14.) Koltun restricted Arms's contact with the media (*id.*, ¶ 15-16), denied Arms the ability to carry over the vacation hours she earned in 2015 to 2016 (*id.*, ¶ 22), and undermined Arms's ability to perform her jobs (*id.*, ¶¶ 23-24). Abele failed to acknowledge Arms while speaking at a number of public events (*id.*, ¶¶ 17-18, 20-21) and did not show up for a previously-scheduled meeting with Arms on September 14, 2015

(*id.*, ¶ 19). Arms was also paid at a lower rate than Stein had been paid when she retired as Director. (*Id.*, ¶ 11.)

In the summer of 2015, Koltun told Arms that Abele needed to hold off on appointments until after the budget process in November. (ECF No. 1, ¶ 26.) Then, after the budget process in November, Koltun told Arms that Abele needed to hold off on appointments until after the County Executive election in April 2016. (*Id.*, ¶ 27.) Nonetheless, in December 2015 Abele appointed Ismael Bonilla as Airport Director. (*Id.*, ¶ 28.)

During a Milwaukee County Commission on Aging meeting on January 22, 2016, county board member and commissioner Steve Taylor, other commissioners, and Department on Aging employees asked Abele's Director of Communications, Claire Zautke, why Arms's appointment was being delayed. (ECF No. 1, ¶ 29.) They vowed to stop supporting Abele as County Executive unless Arms was appointed to Director prior to the April 2016 election. (*Id.*) Koltun later reprimanded Arms for not intervening during the January 22, 2016 meeting, suggesting that Arms should have stated that she had an agreement with Abele to wait for her appointment until after the April 2016 election. (*Id.*, ¶ 30.)

On or about February 2, 2016, Zautke contacted Vonda Nyang to ask whether Arms had taken any sick, personal, or vacation time in the previous two weeks, which Arms alleges "disrupted the [Department on Aging], undermined Arms's authority, and

3

suggested that Abele was looking for a reason to not appoint Arms to the position of Director." (ECF No. 1, ¶ 25.)

On or about February 3, 2016, Arms filed her first complaint of discrimination, alleging discrimination on the basis of color and race. (ECF No. 1, ¶ 31.) After she filed her complaint, Arms was treated with "continuous disrespect" (*id.*, ¶ 32): at the Milwaukee County Commission on Aging meeting on February 26, 2016, Abele's aide, Jon Janowski, implied that he had inside information on Arms and the Department of Aging that he did not want to share in public (*id.*, ¶ 33); on March 10, 2016, Janowski walked pasted Arms "with a stern, or disapproving, look on his face," would not make eye contact, and would not acknowledge Arms with a greeting (*id.*, ¶ 34); on March 11, 2016 and May 27, 2016, Abele failed to acknowledge Arms at public events (*id.*); and Koltun canceled Arms's regular bi-weekly meetings from April 2016 through June 2016 (*id.*).

On May 15, 2016, Arms formally applied for the position of Director of the Department on Aging. (ECF No. 1, ¶ 35.) Arms had thirteen years of experience working on issues related to aging. (*Id.*, ¶ 36.) In June 2016, Arms began taking medical leave under the Family and Medical Leave Act (FMLA) "because she was unable to work due to her various disabilities, which are fibromyalgia, rheumatoid arthritis, Sjogren's syndrome, osteoarthritis, depression and anxiety." (*Id.*, ¶ 39.) On August 18, 2016, Arms was informed that she was not selected for the position. (*Id.*, ¶ 37.) "Instead, a younger

apparently bi-racial woman with no work experience related to issues of aging was selected." (*Id.*, ¶ 38.)

In September and October 2016 Arms asked Milwaukee County to extend her medical leave "because she was not yet adequately recovered to return to work." (ECF No. 1, ¶¶ 41-42.) Although "Arms is aware of several [Milwaukee] County employees who have been allowed extended leaves of absence for their medical conditions," Milwaukee County denied her requests. (*Id.*, ¶¶ 41-43.) To avoid a discharge, "Arms resigned her position as Assistant Director by letter dated October 31, 2016, effective November 1, 2016." (*Id.*, ¶ 44.)

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

## ANALYSIS

In support of its motion to dismiss Milwaukee County filed an affidavit of Raisa Koltun, attached to which are seven documents: a September 6, 2016 letter from Milwaukee County to Arms requesting medical documentation and responses from Arms's doctor (ECF No. 13-2); a September 19, 2016 letter from Milwaukee County to Arms denying Arms's request for additional leave (ECF No. 13-3); a September 22, 2016 letter from FMLA Source to Arms "confirming decisions made regarding [her] recent request(s) for leave from [her] position at Milwaukee County" (ECF No. 13-4); a September 29, 2016 letter from Arms to Milwaukee County requesting "extended medical leave as a reasonable accommodation under the American Disabilities Act [sic]" (ECF No. 13-1); an October 5, 2016 letter from Milwaukee County to Arms denying Arms's September 29, 2016 request for extended medical leave (ECF No. 13-5); an October 7, 2016 letter from Arms's attorney to Milwaukee County requesting that Milwaukee County "grant Ms. Arms's request for an extension of her leave without pay through January 2, 2017" (ECF No. 13-6); and an October 25, 2016 letter from Milwaukee County to Arms's attorney denying Arms's October 7, 2016 request for extended leave (ECF No. 13-7). As a preliminary matter, the court must decide whether it may consider these documents when ruling on Milwaukee County's motion to dismiss.

A motion to dismiss a complaint under Rule 12(b)(6) is based on the pleadings. *See* Fed. R. Civ. P. 12(d). Having said that, the Court of Appeals for the Seventh Circuit has

held that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). This narrow exception "prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to [her] complaint a document that prove[s] [her] claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)) (first and third alteration in original).

None of the documents attached to Koltun's affidavit are specifically referenced in Arms's complaint. While the complaint alludes to requests for extended leave that were denied (*see* ECF No. 1, ¶¶ 41-42), it is unclear whether the letters attached to Koltun's affidavit constitute the entirety of the communications between Arms and Milwaukee County with respect to Arms's requests for extended medical leave. Therefore, the court concludes that it would be improper to consider the documents filed with Milwaukee County's motion to dismiss. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (stating that a court's ability to look beyond the pleadings "is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment.").

7

In moving to dismiss, Milwaukee County argues that Arms has failed to state a claim for relief under Title VII and Section 1981 (ECF No. 11 at 7-14), the ADA and Rehabilitation Act (*id.* at 14-19), and the ADEA (*id.* at 20-21).

I. **Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981**

"An employer who discriminates against an employee because of [her] race or retaliates against [her] for protesting unlawful discrimination violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, and 42 U.S.C. § 1981." *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). The same standards apply when evaluating Title VII and § 1981 discrimination and retaliation claims. *Id.* (citing *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013)).

   A. **Racial Discrimination**

Milwaukee County argues that Arms fails to state a claim of racial discrimination under Title VII and § 1981 because she "merely state[s] that she is asserting a claim under Title VII and generically describe[s] interactions with her employer that have nothing to do with race." (ECF No. 11 at 9.)

The requirements for pleading a claim of race discrimination under Title VII and § 1981 are "minimal." *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (acknowledging that a complaint must contain "something more than a general recitation of the elements of the claim," and reaffirming "the minimal pleading standard for simple claims of race or sex discrimination"). A complaint need only allege that the employer

8

instituted a specific adverse employment action against the plaintiff on the basis of her race. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013).

Arms alleges in her complaint that Milwaukee County violated Title VII and § 1981 "when she was not appointed to the position of Director for the Milwaukee County Department on Aging without a competitive search" and "when Milwaukee County failed to appoint [her] to the position of Director … after engaging in a national search for a Director." (ECF No. 1, ¶ 1.) While Arms is not required to produce evidence or establish a prima facie case of discrimination in her complaint, *see Tamayo*, 526 F.3d at 1081; *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 827 (7th Cir. 2014), she must describe her claims "in sufficient detail to give the defendant fair notice of what [her] claim[s] [are] and the grounds upon which [they] rest[]." *Bravo v. Midland Credit Management, Inc.*, 812 F.3d 599, 601 (7th Cir. 2016). Arms's complaint fails to allege facts from which it can be inferred that Milwaukee County's failure to promote her to Director (both before and after engaging in a national search) was *because of her race*—that is, she makes no allegation that the adverse employment actions she allegedly suffered were because of her race. As such, Arms has failed to give Milwaukee County sufficient notice as to the grounds upon which her claims of racial discrimination rest.

It is not that the actions alleged in Arms's complaint could *never* support a claim of racial discrimination. But, as currently alleged, Arms's complaint does not meet the

9

minimal pleading standard. Therefore, the court will grant Milwaukee County's motion as to Arms's claims of racial discrimination under Title VII and § 1981.

### B. Retaliation

"To plead a retaliation claim under Title VII, the plaintiff must allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity …." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). "The protected activity must be specifically identified." *Carlson*, 758 F.3d at 828 (citing *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 781 (7th Cir. 2007)).

Arms alleges in her complaint that "[o]n or about February 3, 2016, [she] filed her first complaint of discrimination, in which she complained about discrimination on the basis of color and race," and that she "was informed on August 18, 2016, that she was not selected for the position [of Director of the Milwaukee County Department on Aging]." (ECF No. 1, ¶¶ 31, 37.) However, Arms does not allege that Milwaukee County failed to select her as Director "*as a result of*" her having filed a complaint of discrimination. As such, Arms has failed to state claims of retaliation under Title VII and § 1981. The court will therefore grant Milwaukee County's motion as to those claims.

## II. Americans with Disabilities Act and the Rehabilitation Act of 1973

### A. Discrimination, Failure to Accommodate, and Constructive Discharge

Milwaukee County argues that Arms's complaint fails to state a claim of discrimination and failure to accommodate under the ADA and the Rehabilitation Act as

10

well as a claim of constructive discharge. (ECF No. 11 at 14-18; ECF No. 15 at 9-11.) The County's arguments are entirely premised on Arms requesting a *six-month* leave of absence. (*See id.*) If true, it very well may be that Arms will not survive summary judgment.

However, this is not a summary judgment motion. And the length of additional leave requested by Arms is not stated in her complaint. (*See* ECF No. 1, ¶¶ 41-42.) The Seventh Circuit has left "open the possibility that a brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017.) As such, the court will deny Milwaukee County's motion to dismiss as to Arms's discrimination and failure to accommodate claims under the ADA and the Rehabilitation Act as well as her constructive discharge claim.

### B. Retaliation

"An employer violates the ADA or the Rehabilitation Act[] when the employer takes an adverse employment action against an employee because the employee engaged in an activity protected by the ADA." *Clemens v. Speer*, No. 16-cv-467-wmc, 2017 WL 2684101, at *5 (W.D. Wis. June 21, 2017) (citing *Dickerson v. Bd. of Tr. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601-02 (7th Cir. 2011)). To have engaged in an activity protected by the ADA, the employee "must have asserted [her] rights under the ADA by either seeking

11

an accommodation or raising a claim of discrimination due to [her] disability." *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814-15 (7th Cir. 2015).

Milwaukee County argues that "there are absolutely no allegations in the Complaint that even remotely discuss [Arms] engaging in any activity protected by the ADA or Rehabilitation Act or participated in an ADA or Rehabilitation Act case before the competitive interview process for Director." (ECF No. 11 at 19.) In response, Arms argues that she "was denied the position of Director of the Department on Aging after the nationwide search" because she had requested and taken FMLA leave beginning in June 2016. (ECF No. 14 at 15; *see* ECF No. 1, ¶¶ 35, 37, 39 (alleging that Arms formally applied to be the Director of the Department on Aging on May 15, 2016, began taking FMLA leave in June 2016, and was informed that she was not selected for the position on August 18, 2016).). In reply, Milwaukee County argues that "[t]aking FMLA leave … is not a protected activity under the ADA or Rehabilitation Act. The FMLA is a separate and distinct law from the ADA or Rehabilitation Act." (ECF No. 15 at 12.)

While the Seventh Circuit has not decided whether a request for FMLA leave is protected activity under the ADA, the Court of Appeals for the Fifth Circuit has held that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA." *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). The Fifth Circuit explained:

> "The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir.

12

2001). "FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate provision." *Harville v. Tex. A&M Univ.*, 833 F. Supp. 2d 645, 661 (S.D. Tex. 2011) (citing *Trevino v. United Parcel Serv.*, No. 3:08-CV-889-B, 2009 WL 3423039, *12 (N.D. Tex. Oct. 23, 2009)).

Textual comparison of the FMLA and the ADA demonstrates why requesting FMLA leave alone is not a request for an ADA reasonable accommodation. An employee who requests FMLA leave asserts [she] has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) ("Entitlement to leave"). A request for a reasonable accommodation under the ADA is a claim that the employee "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) ("Definitions: Qualified Individual") …. Thus, an employee seeking FMLA leave is by nature arguing that [she] *cannot* perform the functions of the job, while an employee requesting a reasonable accommodation communicates that [she] *can* perform the essential functions of the job.

*Id.* at 791-92 (emphasis in original).

The court finds this analysis persuasive. Since Arms "was unable to work due to her various disabilities" (ECF No. 1, ¶ 39), she did not engage in any activity protected by the ADA when she requested and took FMLA leave. *See Severson*, 872 F.3d at 481 ("The FMLA protects up to 12 weeks of medical leave, recognizing that employees will sometimes be *unable* to perform their job duties due to a serious health condition. In contrast, *the ADA applies only to those who can do the job*.") (internal quotation marks and citation omitted and second emphasis added). As such, the court will grant Milwaukee County's motion as to Arms's claims of retaliation under the ADA and the Rehabilitation Act.

### III. Age Discrimination in Employment Act

#### A. Discrimination

To plead a claim of discrimination under the ADEA, "a plaintiff must allege that she is over 40 years old and the employer took a specified adverse employment action against her because of her age." *Clark v. SMG Corp.*, No. 16-cv-07985, 2018 WL 4699763, at *5 (N.D. Ill. Sept. 30, 2018); *see Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). Arms alleges in her complaint that "she was over 40 years of age when she was employed by Milwaukee County." (ECF No. 1, ¶ 4.) She also alleges that she was subjected to an adverse employment action when "Milwaukee County failed to appoint [her] to the position of Director of the Milwaukee County Department on Aging after engaging in a national search for a Director." (*Id.*, ¶ 1.) "Instead, a younger apparently bi-racial woman with no work experience related to issues of aging was selected." (*Id.*, ¶ 38.)

Milwaukee County argues that Arms's complaint does not state a claim of age discrimination under the ADEA because "[she] offers this Court no facts by which it could infer that the woman hired as the Director was substantially younger than her." (ECF No. 11 at 20.) However, to survive a motion to dismiss Arms is not required to allege that the woman hired was "substantially younger than her." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("[The Supreme Court] has never indicated that the requirements of establishing a prima facie [discrimination] case … also apply to the

pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *Carlson*, 758 F.3d at 827 (criticizing district court for relying on "summary judgment decisions that addressed not the contents of complaints but the evidence needed to take a claim to a jury").

Moreover, Milwaukee County's argument is premised on a fact that is *not* included in Arms's complaint—that "the woman hired as Director was 45 years old." (ECF No. 11 at 20.) Again, if true, that fact may spell doom for Arms on this claim at summary judgment. But it does not spell doom for her on a motion to dismiss when it is a fact outside of the complaint. Therefore, the court will deny Milwaukee County's motion as to Arms's claim of discrimination under the ADEA.

### B. Retaliation

Milwaukee County argues that Arms "fails to state a claim for retaliation under the ADEA because she cannot identify that she engaged in any activity protected by the statute." (ECF No. 11 at 21.) Arms agrees. (ECF No. 14 at 16.) The court will therefore grant Milwaukee County's motion as to Arms's claim for retaliation under the ADEA.

## IV. Arms's Request to Amend the Complaint

Arms "requests a reasonable amount of time to amend her complaint to repair any deficiencies in the pleading." (ECF No. 14 at 16.) "A plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed … 'unless it is certain from the

15

face of the complaint that any amendment would be futile or otherwise unwarranted.'" *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)) (emphasis omitted). The court will allow Arms the opportunity to amend her complaint.

**IT IS THEREFORE ORDERED** that Milwaukee County's motion to dismiss (ECF No. 10) is **granted** in part and **denied** in part. It is **granted** as to Arms's claims of discrimination and retaliation under Title VII and § 1981, retaliation under the ADA and the Rehabilitation Act, and retaliation under the ADEA. It is **denied** as to Arms's claims of discrimination and failure to accommodate under the ADA and the Rehabilitation Act, discrimination under the ADEA, and constructive discharge.

**IT IS FURTHER ORDERED** that Arms's claim of retaliation under the ADEA is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that Arms may file an amended complaint within **14 days** of the date of this order. If Arms fails to file an amended complaint by this deadline, the court will dismiss with prejudice her claims of discrimination and retaliation under Title VII and § 1981 as well as her claims of retaliation under the ADA and Rehabilitation Act.

Dated at Milwaukee, Wisconsin this 1st day of May, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge