# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

JONETTE ARMS,

            **Plaintiff,**

      **v.**                         **Case No. 18-CV-1835**

MILWAUKEE COUNTY,

            **Defendant.**

---

## DECISION AND ORDER

---

### INTRODUCTION

Plaintiff Jonette Arms filed this action alleging discrimination on the basis of race and disability. Defendant Milwaukee County, her employer at the time, moved to dismiss the complaint. That motion was granted in part and denied in part, and Arms was granted leave to file an amended complaint. *Arms v. Milwaukee Cty.*, No. 18-CV-1835, 2019 U.S. Dist. LEXIS 73970 (E.D. Wis. May 1, 2019). Arms timely filed an amended complaint. Milwaukee County has now filed a motion to dismiss part of that amended complaint. That motion has been fully briefed and is ready for resolution.

# BACKGROUND

The following facts, taken from Arms's original complaint, were recounted in this court's prior decision. The amended complaint is not materially different as to these allegations.

Arms is an African-American female over the age of forty. (ECF No. 1, ¶ 4.) She began her employment with the Milwaukee County Department on Aging in May 2010 as the Assistant Director. (*Id.*, ¶ 7.) When the Director of the Department on Aging, Stephanie Sue Stein, retired on or about June 5, 2015, she recommended to Milwaukee County Executive Chris Abele that he appoint Arms as her successor (*id.*, ¶ 9), and fourteen out of sixteen Commissioners of the Milwaukee County Commission on Aging signed a letter requesting that Arms be appointed as Director (*id.*, ¶ 13). Instead, Abele assigned Arms to a "Temporary Appointment to a Higher Position" as "Interim Director of the Milwaukee County Department on Aging." (*Id.*, ¶ 10.) Arms was required to perform the duties of Assistant Director while also performing the duties of Director. (*Id.*)

Shortly after Arms's appointment as Interim Director, Abele and his Chief of Staff, Raisa Koltun, began to treat Arms differently than they had treated Stein. (ECF No. 1, ¶ 14.) Koltun restricted Arms's contact with the media (*id.*, ¶ 15-16), denied Arms the ability to carry over the vacation hours she earned in 2015 to 2016 (*id.*, ¶ 22), and undermined Arms's ability to perform her jobs (*id.*, ¶¶ 23-24). Abele failed to acknowledge Arms while speaking at a number of public events (*id.*, ¶¶ 17-18, 20-21) and did not show up for a previously-

scheduled meeting with Arms on September 14, 2015 (*id.*, ¶ 19). Arms was also paid at a lower rather than Stein had been paid when she retired as Director. (*Id.*, ¶ 11.)

In the summer of 2015, Koltun told Arms that Abele needed to hold off on appointments until after the budget process in November. (ECF No. 1, ¶ 26.) Then, after the budget process in November, Koltun told Arms that Abele needed to hold off on appointments until after the County Executive election in April 2016. (*Id.*, ¶ 27.) Nonetheless, in December 2015 Abele appointed Ismael Bonilla as Airport Director. (*Id.*, ¶ 28.)

During a Milwaukee County Commission on Aging meeting on January 22, 2016, county board member and commissioner Steve Taylor, other commissioners, and Department on Aging employees asked Abele's Director of Communications, Claire Zautke, why Arms's appointment was being delayed. (ECF No. 1, ¶ 29.) They vowed to stop supporting Abele as County Executive unless Arms was appointed to Director prior to the April 2016 election. (*Id.*) Koltun later reprimanded Arms for not intervening during the January 22, 2016 meeting, suggesting that Arms should have stated that she had an agreement with Abele to wait for her appointment until after the April 2016 election. (*Id.*, ¶ 30.)

On or about February 2, 2016, Zautke contacted Vonda Nyang to ask whether Arms had taken any sick, personal, or vacation time in the previous two weeks, which Arms alleges "disrupted the [Department on Aging], undermined Arms's authority, and

suggested that Abele was looking for a reason to not appoint Arms to the position of Director." (ECF No. 1, ¶ 25.)

On or about February 3, 2016, Arms filed her first complaint of discrimination, alleging discrimination on the basis of color and race. (ECF No. 1, ¶ 31.) After she filed her complaint, Arms was treated with "continuous disrespect" (*id.*, ¶ 32): at the Milwaukee County Commission on Aging meeting on February 26, 2016, Abele's aide, Jon Janowski, implied that he had inside information on Arms and the Department of Aging that he did not want to share in public (*id.*, ¶ 33); on March 10, 2016, Janowski walked pasted Arms "with a stern, or disapproving, look on his face," would not make eye contact, and would not acknowledge Arms with a greeting (*id.*, ¶ 34); on March 11, 2016 and May 27, 2016, Abele failed to acknowledge Arms at public events (*id.*); and Koltun canceled Arms's regular bi-weekly meetings from April 2016 through June 2016 (*id.*).

On May 15, 2016, Arms formally applied for the position of Director of the Department on Aging. (ECF No. 1, ¶ 35.) Arms had thirteen years of experience working on issues related to aging. (*Id.*, ¶ 36.) In June 2016, Arms began taking medical leave under the Family and Medical Leave Act (FMLA) "because she was unable to work due to her various disabilities, which are fibromyalgia, rheumatoid arthritis, Sjogren's syndrome, osteoarthritis, depression and anxiety." (*Id.*, ¶ 39.) On August 18, 2016, Arms was informed that she was not selected for the position. (*Id.*, ¶ 37.) "Instead, a younger apparently bi-racial woman with no work experience related to issues of aging was selected." (*Id.*, ¶ 38.)

Beginning in June 2016 Arms was on leave under the Family and Medical Leave Act (FMLA) "due to her various disabilities, which are fibromyalgia, rheumatoid arthritis, Sjogren's syndrome, osteoarthritis, depression and anxiety." (ECF No. 1, ¶ 39.) In September and October 2016 Arms asked Milwaukee County to extend her medical leave "because she was not yet adequately recovered to return to work." (ECF No. 1, ¶¶ 41-42.) Although "Arms is aware of several [Milwaukee] County employees who have been allowed extended leaves of absence for their medical conditions," Milwaukee County denied her requests. (*Id.*, ¶¶ 41-43.) To avoid a discharge, "Arms resigned her position as Assistant Director by letter dated October 31, 2016, effective November 1, 2016." (*Id.*, ¶ 44.)

Milwaukee County moved to dismiss the complaint on the ground that Arms had failed to state a claim for relief under Title VII and Section 1981, the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Age Discrimination in Employment Act (ADEA). (ECF Nos. 10, 11.)

The court granted Milwaukee County's motion as to Arms's claims of racial discrimination under Title VII and Section 1981. In doing so, the court stated that the complaint "fails to allege facts from which it can be inferred that Milwaukee County's failure to promote her to Director (both before and after engaging in a national search) was *because of her race*—that is, she makes no allegation that the adverse employment actions she allegedly suffered were because of her race." (ECF No. 16 at 9 (emphasis in original).)

The court also granted Milwaukee County's motion as to Arms's retaliation claim under Title VII on the ground that "Arms does not allege that Milwaukee County failed to select her as Director '*as a result of*' her having filed a complaint of discrimination." (ECF No. 16 at 10 (emphasis in original).)

The court denied Milwaukee County's motion as to Arms's claims for discrimination and failure to accommodate under the ADA and the Rehabilitation Act, as well as her claim of constructive discharge. (ECF No. 16 at 10-11.) However, the court granted Milwaukee County's motion as to Arms's claims of retaliation under the ADA and the Rehabilitation Act. In doing so, the court found that the activity which formed the basis for Arms's retaliation claim—requesting and taking leave under the FMLA—was not activity protected by the ADA or the Rehabilitation Act. (*Id*. at 11-13.)

Finally, the court denied Milwaukee County's motion to dismiss Arms's claim of discrimination under the ADEA. (ECF No. 16 at 14-15.) When Arms agreed with Milwaukee County that the complaint failed to state a claim for retaliation under the ADEA, the court granted the County's motion to dismiss that claim. (*Id*. at 15.)

The court granted Arms's request to amend her complaint. Arms amended the complaint on May 15, 2019. The new allegations in the amended complaint are as follows:

> 32. By April 2016, there were ten white Milwaukee County Department Directors and two Hispanic Department Directors; Arms was the only black Department director.

33. On information and belief, Abele refused to appoint Arms to the position of Director of the Department of Aging because of her color or race or both.

…

39. On or about June 25, 2016, Department on Aging Commissioner Vi Hawkins, while discussing the possible appointment of Ms. Arms to the position of Director of the Department [on] Aging, said "how could she [Ms. Arms] be good when she is suing her boss about the job before she is even hired?," or words to that effect.

40. On or about July 28, 2016, Vi Hawkins was part of the interview team that interviewed Ms. Arms for the position of Director of the Department on Aging.

41. Upon information and belief, Hawkins was biased against Arms because Arms had filed a discrimination complaint against Milwaukee County based on Arms's color or race or both; also on information and belief, the interview committee discussed the fact that Arms had filed a discrimination complaint against Milwaukee County based on Arms's color and race.

…

43. Upon information and belief, Arms was not selected for the position as Director of the Department of Aging based on her color, her race, or both.

44. Upon information and belief, Arms was not selected for the position as Director of the Department of Aging as a result of and in retaliation for her having filed a complaint of discrimination against Milwaukee County.

…

46. [Arms was placed on Family and Medical Leave beginning in June 2016] as a reasonable accommodation for her disabilities and characterized by the County as FMLA leave.

…

51. Upon information and belief, the County denied Arms's additional leave as a result of and in retaliation for her having filed a complaint of discrimination against Milwaukee County.

52. Upon information and belief, the County denied Arms's additional leave as a result of and in retaliation for her having requested leave as a reasonable accommodation for her disabilities.

(ECF No. 17.)

Milwaukee County has filed a Partial Motion to Dismiss Amended Complaint. (ECF No. 19.) The County contends that the amended complaint fails to state a claim for relief for race discrimination under Title VII and Section 1981. (ECF No. 20 at 5.) The County also contends that the amended complaint fails to state a claim for retaliation under Title VII and Section 1981. (*Id*. at 11.) And the County contends that the amended complaint fails to state a claim for retaliation under the ADA or Rehabilitation Act. (*Id*. at 14.)

In response, Arms alleges that the amended complaint is sufficient. (ECF No. 22.) To the extent it is not, she submits a Second Amended Complaint that contains even more allegations. (ECF No. 21.) Arms does not seek leave to file a second amended complaint. Rather, she simply says that "[t]he Second Amended Complaint should be allowed by the Court, since the County has yet to file an answer to either the original or the amended complaint, and the Second Amended Complaint is filed within 21 days of receipt of a motion to dismiss. *See* Fed. R. Civ. Pro.)." (ECF No. 22 at 2.) Various sections of her response rely on allegations contained not in the Amended Complaint but in the Second Amended Complaint.

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

**ANALYSIS**

## I.    Second Amended Complaint

Because in opposing the latest motion to dismiss Arms relies on allegations contained in the Second Amended Complaint, the first question the court must take up is whether to accept the Second Amended Complaint. Arms does not seek permission to file the Second Amended Complaint, but rather contends that she has the right to proceed with it under Rule 15(a)(1)(B). But, of course, Rule 15(a) only allows a party to amend her pleadings "once" as a matter of course. After that, a party may only amend her pleadings "with the opposing party's written consent or the court's leave." Fed. R.

Civ. P. 15(a)(2). That leave is to be freely given when justice so requires. *Id.* Although Arms argues she has not yet used her one "as a matter of course" amendment because her first amendment was done with leave of the court, she offers no authority for this reading of the rule.

Even if Arms's reading of the rule is incorrect, the court will nonetheless grant her leave to amend her complaint a second time. The Second Amended Complaint does not materially change the allegations in the Amended Complaint, but simply provides additional detail to support the claims it contains. Notwithstanding the fact that the two motions to dismiss have resulted in the passage of some time, the case is still in its early stages, with no scheduling order having yet been entered. Under these circumstances, the court concludes that justice requires that leave to amend a second time be given to Arms. Thus, the court will accept the Second Amended Complaint.

## II.     Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981

"An employer who discriminates against an employee because of [her] race or retaliates against [her] for protesting unlawful discrimination violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3, and 42 U.S.C. § 1981." *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). The same standards apply when evaluating Title VII and § 1981 discrimination and retaliation claims. *Id.* (citing *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013)).

## A. Racial Discrimination

"[A] plaintiff alleging employment discrimination under Title VII may allege these claims quite generally." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Even after *Twombly*, to state an employment discrimination claim a plaintiff need aver only that an employer took an adverse action due to the plaintiff's protected status. *See id.* at 1084 (discussing *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773 (7th Cir. 2007)). The Second Amended Complaint contains such an allegation. Nothing more is required.

Alternatively, Milwaukee Count alleges that the amended complaint includes facts that plead Arms's race claims out of court. Specifically, the County contends that Arms "pleads away her race claims when she affirmatively alleges that no one outside of her protected class was appointed to the Director position without a competitive search." (ECF No. 20 at 8.) This argument has two components: first, that Arms has not identified a practice or policy to establish that she had a right to be promoted to the Director of the Department of Aging position without a competitive search; and, second, that Arms pleads away her claim that race played a part in not being selected for the Director's position when she alleges that the person hired was someone within her protected class. (*Id.* at 8-9.)

In response, Arms contends that the "comparator evidence" that supports her race discrimination claim is not just evidence of the person ultimately hired as the

Director of the Department of Aging but evidence of those persons hired as directors of other Milwaukee County agencies, all of whom are Caucasian and all of whom were hired without a nationwide competitive search. (ECF No. 22 at 10-11.) Moreover, she argues, "pleading that the successful candidate is bi-racial does not in any way eliminate Arms's claim that she was subject to discrimination on the basis of color[,]" since "a bi-racial individual would be of a lighter color than an individual who is not bi-racial." (*Id*. at 11.)

The Second Amended Complaint alleges that Milwaukee County Executive Chris Abele "had and has the authority to appoint Milwaukee County agency Directors without engaging in a competitive or nationwide search, and has routinely done so throughout his tenure as County Executive." (ECF No. 21, ¶ 10.) It identifies five Caucasian individuals appointed to agency director positions without a national search or advisory committee interviews. (*Id*., ¶ 11.) It alleges on information and belief that "Abele refused to appoint Arms to the position of Director of the Department of Aging because of her color or race or both." (*Id*. ¶ 42.) The person ultimately hired was "a younger apparently bi-racial woman with no work experience related to issues of aging" who "has appeared unsympathetic and insensitive to complaints by her African-American employees about treatment that they considered racially biased." (*Id*., ¶ 53.)

Whether Arms will be able to prove that she was treated differently than similarly-situated Directors based on her race and/or color is not the issue at this stage.

The only question is whether she has alleged disparate treatment. She has. As such, the motion to dismiss her race discrimination claim will be denied.

## B. Retaliation

"To plead a retaliation claim under Title VII, the plaintiff must allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity …." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). "The protected activity must be specifically identified." *Carlson*, 758 F.3d at 828 (citing *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 781 (7th Cir. 2007)).

In her Second Amended Complaint, Arms alleges, upon information and belief, that she was not selected for the position as Director of the Department of Aging as a result of and in retaliation for her having filed a complaint of discrimination against Milwaukee County. (ECF No. 17, ¶ 44.) In moving to dismiss the retaliation claim, the County contends that Arms's new allegation is merely a "bare conclusion of law." (ECF No. 20 at 11.) But there is no requirement that she say more. The County's motion to dismiss the retaliation claim will be denied.

## III. Retaliation under the ADA and Rehabilitation Act

Milwaukee County also moves to dismiss Arms's claims for retaliation under the ADA and Rehabilitation Act. In response, Arms requests that the claim be dismissed without prejudice so that, in the event evidence surfaces to support the claims, she can

again amend her complaint to add the claims back in to this lawsuit. As a result, the retaliation claim under the ADA and Rehabilitation Act will be dismissed.

**IT IS THEREFORE ORDERED** that Milwaukee County's motion to dismiss (ECF No. 19) is **granted in part and denied in part.** It is granted with respect to Arms's retaliation claims under the ADA and the Rehabilitation Act. It is denied as to all other grounds.

**IT IS FURTHER ORDERED** that Arms's Second Amended Complaint (ECF No. 21) is now the operative complaint. Milwaukee County shall respond to this complaint within 14 days. Fed. R. Civ. P. 15(a)(3).

Dated at Milwaukee, Wisconsin this 9th day of August, 2019.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge