LAW OFFICE OF
# ARTHUR HEITZER
Suite 1410
633 West Wisconsin Avenue
Milwaukee, Wisconsin 53203-1918

Arthur Heitzer

Brenda Lewison

Telephone (414) 273-1040

Facsimile (414) 273-4859

Via email only

July 31, 2020

Attorneys Ronald Stadler and Jonathan Sacks
Jackson Lewis PC
330 E. Kilbourn Ave., Suite 560
Milwaukee, WI 53202-3144

>    RE: Jonette Arms v. Milwaukee County
>    Eastern District of Wisconsin Case No. 18-cv-1835
>    Discovery deficiencies

Dear Attorneys Stadler and Sacks:

Please consider this letter in regards to certain deficiencies in the Defendant's responses to Plaintiff's First requests for production of documents. I have written this as a brief in order to expedite filing motions to compel, if necessary.

## I. THE COUNTY ENGAGED IN OBFUSCATION IN REFUSING TO IDENTIFY THE DOCUMENTS IT CLAIMED RESPONDED TO THE REQUESTS FOR PRODUCTION OF DOCUMENTS.

The County failed to meet the requirements of the Federal Rules of Civil Procedure related to properly answered requests for production of documents. FRCP Rule 34(b)(2)(E)(i) requires that a party must produce documents in responses to requests for production "as they are kept in the usual courts of business" (i.e. the originals), or else the party must "organize and label them to correspond to the categories in the request." The County's disclosures contain Bates-stamps. The County could easily have identified which documents responded to which requests, but failed to do so, thereby failing to answer the requests.

In order to properly respond to the requests for production of documents, the County must identify which documents respond to which requests. It must do so promptly, as some of the documents will likely be used for upcoming depositions.

## II. THE COUNTY HAS ENGAGED IN OBSTRUCTION AND OBFUSCATION IN CLAIMING THAT REQUESTS WERE OVERBROAD AND VAGUE.

The County has claimed that Arms's Request No. 4 (Produce all documents and electronically stored information that relates to any and all defenses and affirmative defenses in the above-captioned matter) is overbroad and vague because it does not specify which defense or affirmative defense is the subject of the request. These objections cannot be taken seriously, as this request merely re-states the requirements for initial disclosures contained at Fed. R. Civ. Pro. 26(a)(1)(A)(ii).

As a general matter, the County made boilerplate objections to the vast majority of the interrogatories and requests for production of documents. Courts have expressed the increasing disfavor with which courts view obstructionism and obfuscation by the use of boilerplate objections by counsel in discovery responses. In *State of Arizona, Civil Rights Division v. Asarco,* Case No. 08-441 (Excerpt of trial transcript dated April 13, 2011), Judge Mark W. Bennett from the Northern District of Iowa, sitting by designation in the District of Arizona, apparently *sua sponte,* told the Quarles & Brady attorneys as follows:

> Well, I've looked at your answers to --- your interrogatory answers to number 44. And if your firm ever files answer like that in a case that I have – and it still may – and this is a case I have – I guarantee you your partnership earnings are going to go down per partner. …
> And let me tell you, I mean, I'm beyond offended by it, and I'll tell you why. Your general objections are obstructionist, frivolous, lack any basis in law or fact, and are – actually have been barred by every circuit that has ever ruled on the question, including the Ninth Circuit.

2

> So if I ever see general objections, you object because it's attorney-client privilege, you object because it's overbroad and vague and ambiguous, unduly burdensome and oppress – you know you have every boilerplate objection in these answers to interrogatories. And there's absolutely nothing objectionable about the interrogatories asked in this document.
> And every circuit has held that if you make an objection based on the fact that they're vague or overbroad, you have a duty to specifically point out why they're vague or overbroad and you don't do that.
> And I guarantee you – you have my personal guarantee – if I ever see anything like this in a case because your firm has had cases before me, there will be eye-popping sanctions that reduce your partnership income. You have my personal guarantee.

*Id.*, pp. 2-3; see Jarvey, 61 Drake Law Rev. 913, 933, fn.144. Judge Bennett goes on to identify a published case on the topic. See *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 198 F.R.D. 508 (N.D. Iowa 2000). In this case, Judge Bennett, also *sua sponte,* made some blistering remarks regarding the extent to which circuits have been quite clear in denouncing general objections, especially generally objections which are obstructionist, boilerplate, and frivolous. He specifically notes that to use such obstructionist objections to avoid answering discovery constitutes abusive discovery tactics.

In a subsequent case, Judge Bennett decried boilerplate objections and ended his decision regarding a motion to compel as follows: NO MORE WARNINGS. IN THE FUTURE, USING "BOILERPLATE" OBJECTIONS TO DISCOVERY IN ANY CASE BEFORE ME PLACES COUNSEL AND THEIR CLIENTS AT RISK FOR SUBSTANTIAL SANCTIONS. *Liguria Foods v. Griffith Laboratories,* Case No. C-14-3041 (N.D. Iowa, 3/14/2017) (emphasis in original).

Even in Wisconsin, there is a relatively recent decision on discovery sanctions by Judge Stadtmueller, of the Eastern District of Wisconsin, in *Baldus, et al. v. Members of*

3

Attorneys Ronald Stadler and Jonathan Sacks
July 31, 2020
Page 4

*the Government Accountability Board, et al.,* Case No. 11-CV-562 (E.D. Wis., 1/3/2012) (the redistricting plan). After three appearances before Judge Stadtmueller and his colleagues regarding discovery deficiencies, the court finally lost patience with defense counsel's discovery tactics and ordered sanctions against Michael, Best & Friedrich and its individual attorneys.

Finally, Fed. R. Civ. Pro. 34(b)(2)(C) requires that the County must state what documents are being withheld because of the objection. Failure to do so risks sanctions in the form of waiver of all objections except privilege. *Fischer v. Forest, et al.,* 2017 WL 773694 (S.D.N.Y., 2/28/2017). The County should either provide the documents or risk the sanction of being prohibited from using the documents or discussing their content (including the topics raised in the documents).

III. THE COUNTY HAS REFUSED TO PROVIDE DOCUMENTS RELATED TO SIMILAR ACTS EVIDENCE.

Arms requested documents to prove the length of time that Jim Keegan, Maria Ledger, Brian Dranzik, Geri Lyday, and Candice Richards[1] were TACHed into their positions as Interim Directors of various County agencies, and documents related to why they were not appointed to positions as Directors. See Requests Nos. 7-16. For Requests 7, 9, 11, 13, and 15, the County again objected that these requests were "vague, needlessly overbroad and unlikely to lead to the discovery of admissible information." The County then proceeded to supply "at least one category of document which demonstrates the timing and length of the TAHC of this individual" for each of the

---

[1] "Candice" should be "Candace."

4

Attorneys Ronald Stadler and Jonathan Sacks
July 31, 2020
Page 5

Interim Directors identified, without stating where that "one category" of document was in the responses, in violation of the Federal Rules of Civil Procedure (see above).

As noted above, courts disapprove of such boilerplate objections to a request being "overbroad" or "vague" without explanation. As for whether the information requested in Requests Nos. 7, 9, 11, 13, and 15 are reasonably calculated to lead to discoverable information, Defendant just issued discovery requests which asks "If you contend that the setting of your salary when originally TACHCed as the acting director of the Department of aging was discriminatory, provide the factual basis for such contention." The Requests Nos. 7, 9, 11, 13, and 15 are reasonably calculated to provide evidence that might support (or refute) such a contention. If the evidence would support the contention, it is obviously admissible evidence, either in support of its own claim or because it is similar acts evidence.

Furthermore, Requests Nos. 8, 10, 12, 14, and 16 are designed to elicit comparator and similar acts evidence. If there are documents which show why these individuals were not appointed to Director positions, they should be provided.

Comparator evidence is not as limited as the County would like it to be. In *Shelley v. Geren,* Case No. 10-35014 (9th Cir. 1/12/2012), is a failure-to-hire/promote age discrimination case. It shows that, contrary to the County's position, the comparator data is not limited to simply the person who did not get the job (here, Arms) and the person who did get the job (here, Davis). *Bobo v. United Parcel Service,* Case No. 09-6348 (6th Cir. 1/9/2012), is a discrimination and retaliation case based on the plaintiff's discharge, brought pursuant to the Uniformed Services Employment and Reemployment Rights Act (USERRA) and pursuant to 42 U.S.C. § 1981, Title VII and the Tennessee

5

Human Rights Act (THRA). It shows that comparator evidence should not be strictly limited to employees with an exact correlation between the plaintiff and others similarly situated; indeed, the court of appeals reversed summary judgment because the circuit court had denied plaintiff's motion to compel evidence related to similarly situated employees based on an overly restrictive interpretation of caselaw regarding which employees were similarly situated. Finally, *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 1/6/2012), is a race and retaliation case which examines who are "similarly situated" employees. The Seventh Circuit's decision is primarily concerned with how to determine just how alike must comparators be in order to be considered similarly situated, and what effect evidence of similarly situated employees may have on a determination regarding whether the employer's alleged reason for a discharge might be pretextual. The Seventh Circuit emphasized that it was *reiterating* that the "similarly-situated inquiry is flexible, common-sense, and factual." *Id.* at 841. The analysis asks "'essentially, are there enough common features between the individuals to allow a meaningful comparison?'" *Id.* (citations omitted.)

Arms submits that the information she has requested could reasonably lead to information regarding employees and applicants for agency Director positions with the County who have enough common features with her to allow a meaningful comparison, for the reasons cited above. Furthermore, while arguemnts regarding whether an employee is a proper comparator may be appropriate at summary judgment, such arguments are not appropriate bases for objection to discovery requests.

Besides, even if the information requested does not result in the development of additional comparators, the information may provide evidence of other similar acts of

discrimination, clearly admissible in discrimination cases. See, e.g., *Hunter v. Allis-Chalmers Corp.*, 797 F.2d 1417, 1423-24 (7th Cir. 1986) (upholding district court's admission of evidence of harassment of other workers to show that employer condoned racial harassment). Also see *Becker v. ARCO*, 207 F.3d 176, 194 fn. 8 (3rd Cir. 2000) (collecting cases). Thus, if there are other instances where employees who are not members of Arms's protected classes are preferred over employees who are in her protected classes, this would constitute persuasive evidence of discrimination.

The County's contention that Ms. Arms is pursuing some sort of pattern and practice claim is misplaced. The County should provide the requested information or face sanctions.

III. THE COUNTY'S REFUSAL TO PROVIDE INFORMATION REGARDING RECRUITMENT OF COUNTY DIRECTORS SUGGESTS THAT IT IS HIDING INFORMATION THAT WOULD BE HARMFUL TO ITS CASE.

In Requests Nos. 17 and 20, Arms requested information on how the County filled positions on permanent directors. Based on the limited information available, it appears that, a "nationwide" search for a replacement Director is unusual for the County. If there is any such common practice by the County, it should not be hard for the County to provide copies of advertisements, candidates lists and application materials. After all, the County is required to maintain such records for at least a year, and if the county destroyed such records after February 3, 2016, the most likely conclusion is that the County engaged in spoliation.

If there was no such common practice by the County to conduct a nationwide search related to recruitment of Directors, its failure to follow its normal procedures can constitute evidence of pretext. *Rudin v. Lincoln Land Community College*, 420 F.3d 712,

7

Attorneys Ronald Stadler and Jonathan Sacks
July 31, 2020
Page 8

727 (7th Cir., 2005) citing *Giacoletto v. Amax Zinc Co.*, 954 F.2d 424, 427 (7th Cir., 1992).

As for a spreadsheet indicating certain information about various individuals appointed to positions as Directors, the County has again failed to identify where in the documents provided the alleged spreadsheet is, in violation of FRCP Rule 34(b)(2)(E)(i). The requested information should be provided and, in the event that the County takes the position that it has been provided, the County should identify where it was provided.

IV. THE COUNTY'S FAILURE TO PROVIDE DOCUMENTS THAT ARE SUBJECT TO WISCONSIN'S OPEN RECORDS LAW AGAIN SUGGESTS THAT IT IS HIDING INFORMATION THAT WOULD BE HARMFUL TO ITS CASE.

Request No. 23 asks for information which would show how the County Executive treated other cabinet members, which could be valuable comparator or similar acts evidence. The documents are clearly records under Wisconsin's Open Records Law. See https://www.doj.state.wi.us/sites/default/files/office-open-government/Resources/PRL-GUIDE.pdf, at pp. 2-6 (definition of what is and is not a record subject to the law).

Request No. 33 asked for the Department on Aging organization charts for the period from April 2010 to the present. These should be fairly easy to obtain, but even if they are not, the County should at least provide the documents for which there was no objection. Fed. R. Civ. Pro. 34 (b)(2)(C).

V. THE COUNTY'S RESPONSES ARE SOMETIMES INCOMPLETE.

The response to Interrogatory No. 2 refers to why Ms. Arms was not selected to be the Director of the Department on Aging after the nationwide search and the

8

Attorneys Ronald Stadler and Jonathan Sacks
July 31, 2020
Page 9

subsequent interview process, but it does not address why Ms. Arms was not selected to be the Director without a nationwide search. The County must provide a non-discriminatory reason as to why Ms. Arms was not selected through a non-competitive process.

Request No. 27 asks for letters of reference for Holly Davis, Jordan Luhr, Jonette Arms and Colleen Peebles. Ms. Arms submitted numerous letters of reference, but they were not provided in the responses to the request. It is only logical to conclude that the other applicants also submitted letters of reference, and that the County also failed to provide those letters.

Request No. 31 asked for the authentic voice recordings of the Commission on Aging meetings. They were not provided or, if they were, the County failed to identify where in the responses they provided the recordings.

To the extent that the County documents or recordings responsive to Requests Nos. 27 and 31, it should provide the documents or recordings. If the County maintains that it has already provided the documents or recordings, it should identify where and when it provided the documents or recordings.

VI. PERSONNEL FILES ARE DISCOVERABLE

The County has refused to provide *any* personnel files other than the personnel file of Holly Davis. Again, these files are public records subject to Wisconsin's Open Records Law. See https://www.doj.state.wi.us/sites/default/files/office-open-government/Resources/PRL-GUIDE.pdf at pp. 44-45.

In discrimination actions, employee personnel files maintained by defendant employers are clearly discoverable. *See Ollie, et al., v. Highland School District Number*

9

*203,* 50 Wn. App. 639, 749 P.2d 757 (Ct. App. 1988) (trial verdict reversed for abuse of discretion where court denied employee-plaintiff's motion to compel production of personnel records); *Mortgage Recruiters, Inc. v. 1st Metro. Mortg. Co.,* 2003 U.S. Dist. LEXIS 10145 (N.D. Ill.) (defendant was ordered to ship personnel records from Macon, Ga., to Chicago; sanctions imposed for defendant's failure to comply with court's order). The issue was thoroughly examined in *Jones v. Hamilton County Sheriff's Dep't,* as follows:

> Defendants' privacy concerns in its employment records are well-founded. However, Jones may discover the requested personnel files of similarly situated employees Tidwell, Young, and Graham. "Personnel files contain highly relevant information" that would "greatly assist" a plaintiff in conducting discovery. *Spina v. Forest Preserve of Cook County,* 2001 U.S. Dist. LEXIS 19146, 2001 WL 1491524, *3 (N.D. Ill. 2001). This was demonstrated recently in *Tomanovich v. Glen,* 2002 U.S. Dist. LEXIS 14885, 2002 WL 1858795 (S.D. Ind. 2002). In that case, plaintiff requested the personnel files of individuals similarly situated to her. In granting plaintiff's motion to compel, the Court held that the "production of these requested personnel files will[] assist Tomanovich in establishing a prima facie case of race, national origin, and age discrimination since she must show that similarly situated employees outside her protected class received more favorable treatment in compensation, promotion, disciplinary action, and termination, and will likely include relevant information such as age and last known address." 2002 U.S. Dist. LEXIS 14885, Id. at *7. However, the Court permitted the defendant to redact any social security numbers that may appear in documents. *Id.* See also *EEOC v. Staffing Network, L.L.C.,* 2002 U.S. Dist. LEXIS 21318, 2002 WL 31473840, *5 (N.D. Ill. 2002) ("privacy concerns notwithstanding, personnel files may be discoverable under certain circumstances."); *Wright v. Hollywood Casinos,* 2002 U.S. Dist. LEXIS 8486, 2002 WL 989457, *2 (N.D. Ill. 2002) (plaintiff entitled to personnel files of employees who held the same job as plaintiff); *Chavez v. DaimlerChrysler Corp.,* 206 F.R.D. 615, 622 (S.D. Ind. 2002) (the information contained in personnel files of similarly situated individuals may assist plaintiff in establishing his disparate treatment claims); *Coughlin v. Lee,* 946 F.2d 1152, 1159 (5th Cir. 1991) ("In Title VII litigation, in which plaintiffs are similarly required to demonstrate pretext, courts have customarily allowed a wide discovery of personnel files.").

> The Court also finds that Jones can discover the personnel files of the individually-named Defendants, each of whom allegedly played a role in Jones' termination. The discovery of personnel files of supervisory employees was discussed in *Sykes v. Target Stores,* 2002 U.S. Dist. LEXIS 6627, 2002 WL 554505 (N.D. Ill. 2002). There, plaintiff sought the personnel files of individuals involved in the decision not to promote him. Plaintiff claimed entitlement to these documents because this "information may lead to admissible evidence regarding instances where Target discriminated against other individuals." 2002 U.S. Dist. LEXIS 6627, Id. at *3. The court agreed. "Evidence of general patterns of discrimination is discoverable in disparate treatment cases ... [Plaintiff's] request for supervisor personnel files is reasonably calculated to lead to the discovery of prior complaints of discrimination against Target." 2002 U.S. Dist. LEXIS 6627, Id. at *4. See also *Spina v. Forest Preserve of Cook County,* 2001 U.S. Dist. LEXIS 19146, 2001 WL 1491524, *3 (N.D. Ill. 2001) (court ordered production of personnel files of individual defendants and of females who complained of sexual harassment and/or discrimination); *Revelle v. Trigg,* 1999 U.S. Dist. LEXIS 890, 1999 WL 80283, *3 (E.D. Pa. 1999) ("discovery of supervisory evaluations and other materials in police personnel files is often permitted, despite a concern that supervisors be allowed to discipline and evaluate their subordinates candidly, because these documents may, in many cases, be the best available evidence of the knowledge and state of mind of the supervisory officials."). Again, Defendants may redact any social security numbers that appear on any documents.
>
> *Jones v. Hamilton County Sheriff's Dep't,* 2003 U.S. Dist. LEXIS 10100 (D. Ind., 2003).

Indeed, even the U.S. Supreme Court has acknowledged that employees are entitled to "broad access to an employer's records." *Wards Cove Packing Co. v. Antonio,* 490 U.S. 642, 657 (1989).

In the case at bar, the records requested relate to individuals already identified as potential witness, comparables, or individuals about whom Arms may be able to develop similar acts evidence. There may be disparaging information in the personnel files which could be used to undermine the veracity of a witness. There may also be information which would indicate that other employees have made complaints about being subjected

to illegal discrimination in the selection process for the job they held or hold.

Furthermore, counsel for Ms. Arms has offered to review the files at the offices of the County's counsel, and to identify which documents, if any, should be provided from specific files. She has specifically requested that the County *not* provide the entire files for each individual identified. The County has no grounds for denying the request.

Thank you for speaking with me today so that I could give you an overview of the discovery deficiencies I see in the County's responses to Ms. Arms's discovery requests. I sincerely hope that we are able to resolve our differences regarding what the County is required to provide. Once you have had an opportunity to review this letter and the County's responses, we may want to conduct another meet and confer appointment to discuss these issues at more length.

Sincerely,

s/ Brenda Lewison
Brenda Lewison

cc: Jonette Arms (via email only)