UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JONETTE ARMS,

        Plaintiff,

v.                                      Case No. 2:18-cv-1835

MILWAUKEE COUNTY
(Department on Aging).

        Defendant.

# DEFENDANT'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11

        NOW COMES the Defendant, Milwaukee County (the "County"), by and through its attorneys, Jackson Lewis P.C., and hereby respectfully moves the Court pursuant to Rule 11 of the Federal Rules of Civil Procedure for an order granting the County's motion for sanctions. The grounds for this motion are set forth below and based on all other pleadings on file.

## LEGAL STANDARD

Rule 11 provides that:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

One of the basic purposes of Rule 11 is to "deter baseless filings in the district court." *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 656 (7th Cir. 2003). Under Rule 11(c), a district court may impose sanctions on a party or her counsel (or both), for failing to comply with Rule 11(b). Fed. R. Civ. P. 11(c); *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (stating that "a court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, [or] without factual foundation . . . .").

Rule 11 imposes on attorneys an "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,* 498 U.S. 533, 551, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991). However, "[i]f an attorney subsequently becomes aware of information or evidence which reasonably leads him to believe that there is no factual or legal basis for his position, giving due regard to the standard of proof, then that attorney is under an obligation to re-evaluate the earlier certification of the cause under Rule 11." *Woodfork v. Gavin*, 105 F.R.D. 100, 104 (N.D. Miss. 1985). The Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc'y v. Office and Prof'l Emps. Int'l Union, Local 39,* 443 F.3d 556, 560 (7th Cir. 2006).

All Plaintiff's causes of action violate Rule 11. While some were frivolous from the start of this litigation, the frivolous nature of others should have been evident at the close of discovery. The continued pursuit of this case violates Rule 11.

**ARGUMENT**

**I. PLAINTIFF KNEW HER ADA AND REHABILITATION ACT CLAIMS WERE LEGALLY DEFICIENT FROM THE START OF THE CASE.**

Plaintiff based her ADA[1] claim on the fact that the County refused to provide her with six months of unpaid leave as a reasonable accommodation after she had exhausted all her FMLA qualified leave. In order to take advantage of the protections of the ADA or Rehabilitation Act, a Plaintiff must be a "qualified individual with a disability." However, it is well understood under the law that if one cannot work, then one is not a qualified individual with a disability. *See Maffeo v. Butler Univ.*, No. 1:16-cv-01987-TWP-MPB, 2018 U.S. Dist. LEXIS 28648, at *30-31 (S.D. Ind. Feb. 20, 2018).

Since at least 2017 the Seventh Circuit has definitively held that "a medical leave spanning multiple months does not permit the employee to perform the essential functions of his job" and "the inability to work for a multi-month period removes a person from the class protected by the ADA." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 1441, 200 L. Ed. 2d 717 (2018). The Court also explained that "[a] multimonth leave of absence is beyond the scope of a reasonable accommodation under the ADA." *Id.* at 479. Subsequently, the Seventh Circuit explained: "*Severson* requires us to hold that a request for **six months of medical leave in addition to the twelve weeks required by the FMLA** removes an employee from the protected class under the ADA and the Rehabilitation Act." *Golden v. Indianapolis Hous. Agency*, 698 F. App'x 835, 837 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 1446, 200 L. Ed. 2d 719 (2018) (emphasis added).

---

[1] The legal standards under the Rehabilitation Act and the ADA are identical. *Golden v. Indianapolis Hous. Agency*, 698 F. App'x 835, 836–37 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 1446, 200 L. Ed. 2d 719 (2018).

Plaintiff exhausted all her FMLA leave and other available unpaid leave in September 2016. [ECF 52, ⁋ 125]. She then requested an accommodation under the ADA in the form of unpaid leave until at least March 31, 2017, and never requested the County provide any accommodation other than indefinite unpaid leave. [ECF 52, ⁋⁋ 126-128]. Plaintiff was not cleared to work again by her treating physician until April 3, 2017. [ECF 52, ⁋ 135]. Plaintiff acknowledged that she could not perform any work for the County from June 6, 2016 to at least April 3, 2017 and that during this time period she could not perform the essential functions of her job with or without an accommodation. [ECF 52, ⁋ 136].

Plaintiff knew all these facts prior to filing suit. In fact, the County raised this argument and provided documentation supporting these facts when it moved to dismiss the original complaint. *See Arms v. Milwaukee Cty.*, No. 18-CV-1835, 2019 U.S. Dist. LEXIS 73970, at \*6-8 (E.D. Wis. May 1, 2019). While the Court denied the County's motion to dismiss on this issue, it did so because it declined to incorporate the evidence by reference for purposes of the motion to dismiss. *See id.* at \*11-12. Plaintiff intentionally omitted the length of her request for leave in the Complaint in order to avoid dismissal under *Severson*. *See id.* at \*12 ("[T]he length of additional leave requested by Arms is not stated in her complaint."). The Court warned Plaintiff that if she had in fact requested a six month leave of absence then her ADA claim would almost certainly fail: "The County's arguments are entirely premised on Arms requesting a *six-month* leave of absence. (*See id.*) If true, it very well may be that Arms will not survive summary judgment." *Id.* at \*11.

While Plaintiff knew that length of her requested leave from the start, she also admitted that she was not a "qualified individual with a disability" during her deposition. [ECF 52, ⁋ 137]. Plaintiff appeared to base her argument on the fact that other County employees were provided

4

long term medical leaves of absence, *see* [ECF 37-2, pp. 5-6], but how the County dealt with other requests for leave is entirely irrelevant because Plaintiff was not a qualified individual entitled to the protections of the ADA or Rehabilitation Act.

Plaintiff's ADA and Rehabilitation Act claims were therefore frivolous; Plaintiff knew the claim was frivolous and her own admissions support the presence of that knowledge.

## II. PLAINTIFF'S RETALIATION CLAIM IS FRIVOLOUS BECAUSE SHE KNEW THAT AN INDEPENDENT PANEL MADE THE DECISION TO NOT MOVE HER TO THE FINAL ROUND OF INTERVIEWS.

Plaintiff's retaliation claim under Title VII and Section 1981[2] also violated Rule 11 once she became aware that the decision to not appoint her as Director after the conclusion of the competitive interview process was made by an independent panel without the participation of County Executive Abele, the ultimate decisionmaker. *See* Fed. R. Civ. P. 11(b)(3).

An essential element of a Title VII retaliation claim is causation, which must be provided according to traditional principles of but-for causation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013). It is well established that an intervening event can break any potential causal connection. *See Appleton v. City of Gary*, 781 F. App'x 501, 505 (7th Cir. 2019); *Stohl v. Saint Joseph Health Ctrs. & Hosp.*, No. 97 C 4970, 1998 U.S. Dist. LEXIS 8688, at *47 (N.D. Ill. June 2, 1998) ("In Title VII retaliation cases, just as in the law of torts, intervening causal events break the chain of causation linking two events.").

Plaintiff's entire retaliation claim is based on a theory that she was not selected as Director because she filed an ERD complaint on February 3, 2016. The undisputed evidence established through discovery was that Plaintiff scored the lowest of any candidate during her interview with

---

[2] Courts apply the same elements to retaliation claims under Title VII and Section 1981. *See Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

5

the second interview panel and they did not recommend that she move on to the final interview with the County Executive. [ECF 52, ¶¶ 83-87]. The County Executive was not personally involved in the interview process and accepted the recommendations from the interview panel. [ECF 52, ¶¶ 85-86].

The interview panelists also testified that they did not consider Plaintiff's ERD complaint in making their recommendations. [ECF 52, ¶ 88]. At the very least, Plaintiff knew that her retaliation claim had no evidentiary support as of the close of discovery in this case. Plaintiff specifically alleged in her Second Amended Complaint that County Executive Abele did not appoint her based on the filing of her ERD complaint. *See* [ECF 21, ¶ 40] ("On information and belief, Abele resented being accused of discrimination on the basis of race."). The fact that the individual with alleged retaliatory intent was not involved with her interview or made the decision to not have her move to the final interview means that her retaliation claim is baseless. The fact that Plaintiff objectively and subjectively performed the worst during her interview and that the panelists did not recommend that she proceed to the final interview with the County Executive insulates the County from any liability for retaliation. These facts mean that there is no evidentiary support for Plaintiff's retaliation claim.

### III. PLAINTIFF'S COLOR DISCRIMINATION CLAIM WAS NEVER ACTUALLY ABOUT COLOR AND THERE WAS NEVER ANY EVIDENTIARY SUPPORT FOR THAT CLAIM.

Plaintiff's color discrimination claim is frivolous because there is no evidentiary support that the hue or shade of Plaintiff's skin played any role in any challenged decision and Plaintiff based her claim on the legally frivolous notion that the individual selected as Director was not "culturally" as African American as her.

Plaintiff made it clear from the beginning of her case that she was proceeding under the theory that the County selected someone who she felt was not culturally African American. *See*

[ECF 21, ¶ 53] ("Holly Davis . . . was raised in a white household and has appeared unsympathetic and insensitive to complaints by her African-American employees.").

Discrimination on the basis of color has to be based upon a particular hue of one's skin:

> [a] claim of discrimination based on color arises when the shade or hue of an employee's skin is believed to be the cause of employment discrimination. *Sullivan v. Presstronics, Inc.*, 1997 U.S. Dist. LEXIS 8402, No. 96 C 7436, 1997 WL 327126, at *2 (N.D. Ill. June 11, 1997). However, a color claim usually accompanies another charge of discrimination such as race. *Walker v. Secretary of Treasury, I.R.S.*, 713 F. Supp. 403 (N.D. Ga. 1989).

*Pothier-Ward v. Runyon*, No. 96 C 3321, 1998 U.S. Dist. LEXIS 9115, at *10 n.7 (N.D. Ill. June 5, 1998). Plaintiff's case was never about the relative shade or color of her skin. Rather, it was based upon her subjective belief that Holly Davis was not "culturally African American." This position was evident when Plaintiff's counsel's asked Holly Davis during her deposition about what her parents did "if anything, to try to integrate [her] into the African-American community in Racine." Davis Dep. 37:13-15. And, tried to explain to Ms. Davis that: "Being black is more than a matter of race. It's a matter of culture as well." Davis Dep. 38:7-8. There is absolutely no evidence related to shade or hue of skin and this claim completely lacks any evidentiary basis.

### III. PLAINTIFF'S TITLE VII AND SECTION 1981 RACE DISCRIMINATION CLAIMS LACK A FACTUAL AND LEGAL BASIS.

#### A. Plaintiff's failure to appoint claim had no evidentiary support.

"A plaintiff bringing a Title VII case alleging unlawful discrimination must present evidence demonstrating actual discriminatory intent, or at least raising the inference of bad intent, on the part of the defendant." *George v. Bethlehem Steel Corp.*, 116 F.R.D. 628, 629 (N.D. Ind. August 10, 1987). A Title VII claim violates Rule 11 for lacking evidentiary support when a plaintiff never presents any evidence of discrimination. *See id.* ("[Plaintiff] presented no such evidence at trial. In fact, he offered no witnesses, apart from himself, and his documentary evidence was, at best, neutral.").

Plaintiff insisted that she was not appointed as Director due to her race or color, but she has never provided any evidence that her race or color played any role in the decision. She admitted that she had no right to be automatically appointed to the position. [ECF 52, ¶ 9]. This is because Wisconsin law dictates that the authority to appoint a director lies exclusively within the County Executive's discretion. Wis. Stat. § 59.17(2)(b) and (bm).

At the close of discovery, Plaintiff heard directly from the County Executive the reason that he did not appoint her without a competitive application and interview process. County Executive Abele wanted to change the culture of the Department on Aging, and the fact that Plaintiff had been groomed and mentored by the Director who had created that culture gave him great concern about appointing Plaintiff. Through extensive discovery, Plaintiff has brought forth no evidence that this was not the real reason for conducting a nationwide search.

In fact, the only circumstantial evidence Plaintiff has articulated is that some non-African American individuals from other County Departments at some other point in time were appointed as directors without a national search before and after the search for the Department on Aging in 2016. *See* [ECF 12, ¶ 11]. However, Plaintiff ignores that African American candidates have also been appointed without a national search, and non-African American candidates have been required to partake in a national search and application process. *See* [ECF 52, ¶¶ 15-16].

Once discovery closed and Plaintiff had absolutely no evidence to support a claim of discrimination, her claim became frivolous, and by continuing to push forward with a claim for discrimination for failure to appoint, she is violating Rule 11.

8

**B.  Plaintiff's failure to hire claim was not supported by existing law because someone within her own protected class was hired instead of her.**

A claim can also violate Rule 11 if it is not supported by a non-frivolous legal argument. Fed. R. Civ. P. 11(b)(2).  Plaintiff claims that the decision to not select her as the Director after the interview process was based on her race or color.

As discussed above, Plaintiff subjectively and objectively performed the worst of all the candidates on her interview.  The independent interview panel did not recommend her to move on to the last round of interviews.  At the close of discovery, Plaintiff has no evidence that could suggest that her race or color had anything to do with the panel's decision.  One panelist testified that he viewed Plaintiff's race as a positive factor.  [ECF 52, ℙ 96].

In the complete absence of any direct evidence of discrimination, Plaintiff would need to show that someone outside of her protected class was chosen instead of her.  *See Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005).  However, from the start of this case Plaintiff knew that Holly Davis was also an African American woman.  Plaintiff has claimed that Ms. Davis was "bi-racial" (*see* [ECF 12, ℙ 53), but its undisputed that bi-racial individuals are considered of the same protected class under Title VII.[3]  *See Collins v. TIAA-CREF*, No. 3:06cv304-RJC, 2009 U.S. Dist. LEXIS 90992, at *20 n.8 (W.D.N.C. Sep. 23, 2009); *Moore v. Dolgencorp, Inc.*, No. 1:05-CV-107, 2006 U.S. Dist. LEXIS 66973, at *12-13 (W.D. Mich. Sep. 19, 2006).  The fact that no one from outside of Plaintiff's protected class was selected instead of her means that her discrimination claim had no basis in law and was frivolous.

---

[3] Courts apply the same analysis to Title VII and Section 1981 claims premised on race discrimination. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015) ("The legal analysis for discrimination claims under Title VII and § 1981 is identical[.]").  The County will refer to both Title VII and Section 1981 as "Title VII."

9

## CONCLUSION

For the reasons state above, by continuing to maintain her case against the County Plaintiff is violating Rule 11 and the failure to withdraw these claims entitles the County to its attorneys' fees and costs for defending this lawsuit.

Dated this 10th day of November, 2020.

                                            JACKSON LEWIS, P.C.
                                            Attorneys for Defendant

                                            By:    /s/ *Ronald S. Stadler*
                                                            Ronald S. Stadler
                                                             State Bar No. 1017450
                                                             Jonathan E. Sacks
                                                             State Bar No. 1103204

330 E. Kilbourn Avenue, Suite 560
Milwaukee, Wisconsin 53202
telephone: 414-944-8900
facsimile: 414-944-8901
e-mail: Ronald.stadler@jacksonlewis.com
        Jonathan.sacks@jacksonlewis.com