# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JONETTE ARMS,

          Plaintiff,

v.                                    Case No. 18-CV-1835

MILWAUKEE COUNTY,

          Defendant.

## DECISION AND ORDER

### 1. Facts

Jonette Arms was hired as the Assistant Director for the Milwaukee County Department on Aging in 2010. (ECF No. 69-1, ¶ 1.) As the Assistant Director, Arms served under the leadership of Stephanie Sue Stein, who had served as the Director since 1993. (ECF No. 69-1, ¶ 7.) When Stein retired in June of 2015 (ECF No. 69-1, ¶ 19), Arms was temporarily appointed as the Interim Director (ECF No. 69-1, ¶ 21).

The County Executive, who was solely responsible for appointing the next Director, had concerns about how the department had been run by Stein. (ECF No. 69-1, ¶¶ 5, 10, 29.) Because Arms had been mentored and groomed by Stein to be her successor, the County Executive had concerns about hiring Arms to permanently fill the

Director position. (ECF No. 69-1, ¶ 29.) As a result, he chose to conduct a nationwide search for a new Director. (ECF No. 69-1, ¶ 22.)

The County engaged in a comprehensive selection process, involving external stakeholders, in order to fill the Director position. (ECF No. 69-1, ¶ 41.) The County Executive's staff worked with Human Resources personnel to put together an extensive list of diverse organizations, listservs, and online mediums where it could advertise the position to attract high quality candidates. (ECF No. 69-1, ¶ 42.)

When Arms had not been formally made the new Director, on February 3, 2016, she filed a complaint with the Wisconsin Department of Workforce Development, Equal Rights Division (ERD), alleging that the failure to appoint her to the Director position was race and/or color discrimination. (ECF No. 69-1, ¶ 45.) The ERD found no probable cause to believe that the County violated the Wisconsin Fair Employment Act by not appointing Arms as the Director. (ECF No. 69-1, ¶ 46.)

Following the re-election of the County Executive in April of 2016, the process of finding a permanent Director began in earnest, with 81 people applying. (ECF No. 69-1, ¶¶ 67, 70.) The pool was winnowed to five, and two interview panels were created to conduct face-to face interviews of the candidates, the panelists asking uniform questions of the candidates. (ECF No. 69-1, ¶¶ 72-74.) Each interview panel consisted of

individuals representing the County, Human Resources, the Commission on Aging,[1] and other organizations both within and outside Milwaukee County. (ECF No. 69-1, ¶ 75.) At the time of the first round of interviews, which were completed on July 14, 2016, Arms was on medical leave and thus did not participate. (ECF No. 69-1, ¶ 77.) Nonetheless, the County included her in the second round of interviews, which included Arms and three others. (ECF No. 69-1, ¶¶ 78-79.)

In the second round the candidates were again asked uniform questions by the panel of interviewers. (ECF No. 69-1, ¶ 81.) The panel that interviewed Arms consisted of Luis Padilla, Milwaukee County Director of Employee Relations, James Sullivan, Milwaukee County Director of Child Support Services, Peter Holbrook, President and CEO of the Cream City Foundation and a member of the Commission on Aging, and Viola Hawkins, an 80-year-old Black woman who was then Chair of the Commission on Aging. (ECF No. 69-1, ¶¶ 83, 97.) The County Executive was not involved in the interview process. (ECF No. 69-1, ¶ 85.)

Each of the panelists believed that Arms did poorly in her interview. (ECF No. 69-1, ¶ 87.) Although Holbrook viewed Arms's race as a positive factor working in her favor (ECF No. 69-1, ¶ 96), he was disappointed in her interview and felt she was not as articulate and as prepared as the other candidates and did not give responses that convinced him she had the ability to do the job. (ECF No. 69-1, ¶¶ 92-93.) Padilla was

---

[1] The Commission on Aging "is an advisory body that provides valuable insight and guidance to the Department on Aging but does not make policy or management decisions." (ECF No. 69-1, ¶ 6.)

surprised at how poorly Arms performed in her interview (ECF No. 69-1, ¶ 104), and believed that a candidate that does not do well in an interview should not be hired for the job. (ECF No. 69-1, ¶ 93.) Hawkins gave Arms the lowest score of any candidate. (ECF No. 69-1, ¶ 99.) Race played no role in Hawkins's recommendations regarding the candidates. (ECF No. 69-1, ¶ 102.)

The panelists recommended two candidates who they concluded did the best in the interviews. (ECF No. 69-1, ¶¶ 86, 89.) Arms was not one of the two finalists recommended by the panelists. (ECF No. 69-1, ¶ 86.) The County Executive interviewed the two finalists and, on November 16, 2016, appointed one of them, Holly Davis, a Black woman, as the new Director. (ECF No. 69-1, ¶¶ 105, 115, 116.) This appointment was confirmed by the County Board of Supervisors. (ECF No. 69-1, ¶ 119.) Although not selected as the Director, Arms was welcomed to continue as the Assistant Director for the Department. (ECF No. 69-1, ¶ 112.)

Arms was on medical leave from June 6, 2016, exhausting her allotted FMLA and unpaid leave in September of 2016. (ECF No. 69-1, ¶ 121, 125.) She requested additional leave, her doctors stating that the earliest she would be able to return to work would be March 31, 2017, and that no reasonable accommodation would allow her to work before that. (ECF No. 69-1, ¶ 127.) The County denied her request for additional leave. (ECF No. 69-1, ¶ 128.) Arms then requested an indefinite leave of absence. (ECF No. 69-1, ¶ 129.) The County denied this request as well (ECF No. 69-1, ¶ 130), and denied it

4

Case 2:18-cv-01835-WED   Filed 04/01/21   Page 4 of 14   Document 79

again when it was renewed by Arms's attorney (ECF No. 69-1, ¶¶ 131, 134). The County explained to Arms's attorney that the top three positions in the Department on Aging (Arms's Assistant Director position, the fiscal manager position, and the resource manager position) were vacant and that granting Arms the requested leave would have been an undue burden on the County. (ECF No. 69-1, ¶¶ 133-34.)

Arms resigned on October 31, 2016. (ECF No. 69-1, ¶ 138.)

**2. Procedural History**

Arms filed the present action on November 20, 2018. (ECF No. 1.) She alleges that Milwaukee County discriminated against her in violation of Title VII of the Civil Rights Act of 1964, the ADA, the Rehabilitation Act, and the Age Discrimination in Employment Act (ADEA) when it refused to appoint her to the position of Director without having to compete for the position, subsequently refused to hire her for the position, refused to grant her an extended leave of absence, and constructively discharged her by not granting her leave. She also alleges that she suffered retaliation under Title VII and the ADEA. (ECF No. 21, ¶ 65.) The court dismissed Arms's claim that she suffered retaliation under the Americans with Disabilities Act (ADA) and the Rehabilitation Act. *Arms v. Milwaukee Cnty.*, No. 18-CV-1835, 2019 U.S. Dist. LEXIS 134379, at *16 (E.D. Wis. Aug. 9, 2019).

Milwaukee County has moved for summary judgment. (ECF No. 36.) Arms responded (ECF No. 69), and Milwaukee County replied (ECF No. 72). In response to

5

the County's motion, Arms has withdrawn her remaining claims under the ADA and Rehabilitation Act. (ECF No. 69 at 1.) And during Arms's deposition the parties stipulated to the dismissal of her ADEA claim. (ECF No. 49 at 2, fn. 1.)

In support of its summary judgment motion Milwaukee County submitted Proposed Findings of Fact. (ECF No. 52.) Arms responded (ECF No. 69-1) and submitted her own additional proposed findings of fact (ECF No. 56), which are frequently composed of arguments rather than factual propositions, compound, and unsupported by appropriate citations to authority. The court disregards any improper argument, and to the extent that a proposed finding of fact is not properly disputed, it is deemed admitted.

Milwaukee County submitted a "Reply to Plaintiff's Response to Defendant's Proposed Findings of Fact." (ECF No. 73.) Although Civil Local Rule 56(b)(3)(B) authorizes a reply to any *additional* proposed findings of fact submitted by a party opposing the summary judgment motion, it does not allow the moving party to reply to the opposing party's response to the moving party's proposed findings of fact. Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may upon motion or upon its own initiative strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Because defendants are not authorized to reply to a plaintiff's response to the defendant's proposed findings of fact, Milwaukee County's reply (ECF No. 73) will be stricken.

Milwaukee County has also filed a motion for sanctions under Fed. R. Civ. P. 11. (ECF No. 74.) It argues, in effect, that Arms's claims and persistence in prosecuting them are so lacking in merit that she has violated Rule 11(b). As such, it argues that she should be required to pay its costs in defending this action. (ECF No. 74.)

3. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

## 4. Analysis

### 4.1. Applicable Law

Title VII prohibits an employer from discriminating based on a person's race or color, as well as certain other characteristics. 42 U.S.C. § 2000e-2(a). "In discrimination cases, '[w]hen a defendant moves for summary judgment, the singular question for the district court is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Igasaki v. Ill. Dep't of Fin. & Prof'l Regulation*, 988 F.3d 948, ___, 2021 U.S. App. LEXIS 4500, *14 (7th Cir. 2021) (quoting *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020)).

One way a plaintiff may prove discrimination is under the familiar burden-shifting approach of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Igasaki*, 2021 U.S. App. LEXIS 4500, *14-15 (citing *Marshall v. Indiana Dep't of Correction*, 973 F.3d 789, 791-92 (7th Cir. 2020)).

> The familiar *McDonnell Douglas* approach requires a plaintiff to make a prima facie case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext.

*Igasaki*, 2021 U.S. App. LEXIS 4500, *14-15 (quoting *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020)).

> To make a prima facie case under *McDonell Douglas*, a plaintiff must show: (1) he belongs to a protected class; (2) he met his employer's legitimate

expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer.

*Igasaki*, 2021 U.S. App. LEXIS 4500, *15 (citing *Marshall*, 973 F.3d at 791-92). However, a plaintiff need not follow this approach. A plaintiff need only muster enough evidence that could allow a reasonable jury to find in her favor. *Id.* (quoting *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1004 (7th Cir. 2020)).

"Title VII's anti-retaliation provision provides that it is unlawful for an employer to discriminate against its employee because the employee filed a complaint or participated in an investigation of an unlawful employment practice." *Robertson v. Wis. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020) (citing 42 U.S.C. § 2000e-3(a)). "To succeed on a Title VII retaliation claim, a plaintiff 'must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [employer] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Id.* (quoting *Burton v. Bd. of Regents*, 851 F.3d 690, 695 (7th Cir. 2017)).

### 4.2. Failure to Automatically Appoint Arms as Director

Arms contends that she was discriminated against on the basis of her race and color when she was not automatically appointed as the Director of the Department on Aging by virtue of her position as the Assistant Director. The only evidence she offers in support of this claim is that the County Executive "routinely appointed individuals to

9

Director positions as internal promotions or as his own personal selections for the positions." (ECF No. 69 at 7.) But there were also instances where the County Executive conducted outside searches for Directors. (ECF No. 71, ¶ 7.)

In fact, in her own proposed findings of fact Arms states, "There was no process 'usually' involved in the appointment of a Director for a County agency." (ECF No. 71, ¶ 7.) Of the thirteen appointments that preceded that of the Director of the Department of Aging, three involved outside searches. (ECF No. 71, ¶ 7.) Only four are identified as involving an "internal promotion." (ECF No. 71, ¶ 7.) It is unclear how many, if any, involved the promotion of an Acting Director of the department (as opposed to some other person within the department).

In short, Arms has not produced evidence that there was a policy or practice of the County Executive automatically appointing an Assistant or Acting Director as a new Director, much less that the County Executive's decision to not directly appoint Arms was a result of race or color discrimination.

Moreover, the County has provided a legitimate, non-discriminatory reason for conducting a nationwide search—the County Executive's concerns that, under Stein's leadership, the Department was on the wrong track, and a concern that appointing someone who had been mentored by Stein would simply perpetuate those problems. Arms has not produced evidence from which a reasonable finder of fact could conclude that this explanation was pretextual.

Finally, Arms had not yet engaged in protected activity (the filing of her ERD complaint) when she was appointed Interim Director. (ECF No. 69-1, ¶ 45.) Thus, she does not have a plausible argument that the decision to appoint her as Interim Director, rather than automatically as permanent Director, was in retaliation for her engaging in protected activity.

### 4.3. Failure to Appoint Arms as Director After the Nationwide Search

When the County Executive decided to conduct a nationwide search for a new Director, Arms claims she was the best-qualified candidate and should have been chosen. She contends she was not chosen because of her race and color.

"An employee's 'own opinions about [her]…qualifications [do not] give rise to a material factual dispute." *Robertson*, 949 F.3d at 381 (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996)). Arms was eliminated as a candidate by the interview panelists. As stated above, the panel consisted of two Directors of other County departments and two members of the Commission on Aging. (ECF No. 69-1, ¶ 83.) All members of the panel agreed that Arms performed poorly in her interview. (ECF No. 69-1, ¶ 87.) That poor performance was a legitimate, non-discriminatory reason for the panel not choosing Arms as one of the two candidates to recommend to the County Executive. Arms has not produced evidence that could support a finding that the independent conclusion of each of the four panelists that Arms had interviewed poorly was a pretext to discriminate against her on account of her race, color, or because she had engaged in

11

protected activity. In fact, she openly concedes that Hawkins's recommendation was not based on race and acknowledges that Holbrook thought her race was a factor working in her favor. And she offers no evidence that the recommendations of the other two panelists, both members of the Commission on Aging, were based in whole or in part on her race.

Also negating Arms's claim of race or color discrimination is the fact that the candidate eventually appointed as Director following the panel's recommendation is, like Arms, Black. That Davis was, according to Arms, objectively unqualified for the position and ended up performing poorly is not relevant to Arms's claims.

Consequently, the County is entitled to summary judgment on Arms's Title VII discrimination and retaliation claims.

### 4.4. Failure to Grant Leave

Arms also argues that the County's refusal to grant her a six-month unpaid leave of absence after she exhausted all of her paid leave was in retaliation for her having filed a discrimination complaint with the ERD. (ECF No. 69 at 14.) She asserts that the Department on Aging had a longstanding policy that allowed for extended medical leaves, and the County's explanation—that the department needed an Assistant Director—was pretextual, relying on the fact that the County did not fill the position until a few days after Arms's proposed leave would have ended. (ECF No. 69 at 14.)

The County points out that this claim, although included in the first amended complaint (ECF No. 17, ¶ 51), was not included in Arms's second amended complaint (ECF No. 72). Its omission from the second amended complaint indicates a conscious abandonment of the claim. Arms cannot revive it by attempting to amend her complaint in response to the County's motion for summary judgment.

But even if the court were to find that the claim was properly alleged, it would fail. In denying Arms's leave request, the County explained that granting leave would create a hardship for the Department because three top jobs in the Department were vacant and the Director was new. (ECF No. 69-1, ¶ 132.) These were legitimate, non-retaliatory reasons for the County's decision. Arms says that other employees were routinely granted extended leaves. However, these were all subordinate employees. Arms was a top manager seeking extended leave at a time when there was a dearth of leadership in the Department.

As for the delay in filling her position, there is no evidence the delay was anticipated when the County denied her request. Even if it had been anticipated, that by itself would not support an inference of retaliation. By the time the County denied her request for additional leave, it had been seven months since Arms had filed her complaint with the ERD. The passage of that much time tends to undermine any inference of causation. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct.

13

1508, 1511 (2001) (noting that the temporal proximity must be "very close" and citing cases where gaps of three and four months were found insufficient to infer causation).

In sum, Arms has not produced evidence from which a reasonable finder of fact could conclude that, but for her complaint to the ERD, she would have been granted an additional six months of leave.

## 5. Motion for Sanctions

Aside from perhaps some actions brought by pro se litigants, this action is the most factually deficient employment discrimination case the court can recall having been presented to it. But the County has not shown that the plaintiff's persistence with her claims was so lacking in merit that sanctions under Rule 11 would be appropriate.

**IT IS THEREFORE ORDERED** that Milwaukee County's motion for summary judgment (ECF No. 36) is **granted**. This action is dismissed. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Milwaukee County's motion for sanctions (ECF No. 74) is **denied**.

Dated at Milwaukee, Wisconsin this 1st day of April, 2021.

WILLIAM E. DUFFIN
U.S. Magistrate Judge